*91
 
 Proceedings of the Supi eme Executive Council of Pennsylvania, in the case of the Commonwealth
 
 v.
 
 Doan, subsequent to the opinion of the Judges.
 

 In Council. — January 1784.
 

 Council taking into most serious consideration the transcript of the record, transmitted to them by the honorable the judges of the supreme court, of the conviction and attainder of Aaron Doan, by outlawry, the
 
 capias
 
 directed to the sheriff of Bucks county to take the said Aaron Doan, &c., the return thereof, the letter of council to the said judges, and their answer, and the consequences to citizens of this commonwealth, of establishing a precedent, in a capital case, altogether new, thereupon.
 

 Resolvedl
 
 (a)
 
 That it does not appear, that a warrant can be legally issued for putting the said Aaron Doan to death, upon the outlawry aforesaid, for the following reasons :
 

 I. The outlawry of the said Aaron Do an being founded on the “ Act for the advancement of justice, and more certain administration thereof,” passed May 31st, 1718, the said act ought to have been strictly observed, and its directions pursued with an “exceedingly nice and circumstantial”
 
 (b)
 
 exactness, especially, as the penalty would be so ruinous, and the precedent may be so dangerous. But, the proceedings aforesaid vary from the said act in these instances :—
 

 1st. It is not returned by the sheriff, that the party was called on by proclamation “ to answer to the commonwealth,” as according to the said act and the
 
 capias
 
 ought to have been done.
 

 2d. It does not appear (unless by implication or intendment, in this case inadmissible) that the
 
 capias
 
 was “ delivered to the sheriff three months before the return thereof,” as the said act requires; it not being even returned, that the proclamations were made by virtue of the
 
 capias.
 

 3d. The said act and the
 
 capias
 
 “ order the sheriff to make proclamation,” &c., but, the sheriff returns that he caused public proclamation to be made, &c. He does not say, that he was present when the proclamations were made : yet, in many cases of a much inferior nature, a sheriff’s presence is indispensably necessary,
 

 (c)
 

 4th. The act directs the making “ proclamations
 
 in
 
 every court of quar ter sessions, &c,,” but, the sheriff returns, that it was “ made
 
 at
 
 two several courts of quarter sessions, &c.”
 

 5th. The act says, that proclamation shall be made for the party to “ appear before the said justices, at the said supreme court;” but the sheriff
 
 *92
 
 returns, that the party was called upon by proclamation “to appear at the supreme court.”
 

 II. The sheriff returns on the
 
 capias,
 
 that the party was called upon “ to appear at the day and time within specified,” which might be done by reference only in the proclamation to the writ, without expressly mentioning the day and year when the party ought to appear. The return ought expressly to mention the day and year; and no intendment, however strong, is sufficient to supply the defect,
 
 (a)
 
 Where life depends on proclamations, there cannot be too much exactness required, in order that the party may have due notice.
 

 III. The sheriff returns, that “he caused public proclamation to be made, at two several courts of general quarter sessions of the peace, held at New-town, for the county of Bucks, &c.” But it was solemnly determined, on rej)eated argument, and the most serious consideration, by all the judges in
 
 Wilkes’s
 
 case, to which the honorable judges of the supreme court refer— that, from the precedents, it appears, that a series of judgments have required a technical form of words, in the description of the county court, at which an outlaw is exacted; that after the words “ at my county court ” should be added the
 
 name
 
 of the county;
 
 (b)
 
 and after the word “held,” should be added, “ for the county of-” (naming it again). In the return in the present case, the name of the county is not mentioned, before the word “held.”
 

 Upon the authority of these
 
 precedents,
 
 the outlawry in
 
 Wilkes’s
 
 case was
 
 *93
 
 reversed; ana
 
 they,
 
 together with the remarkable judgment in his case, demonstrate the present outlawry to be erroneous; for certainly, it cannot be easier to take away the
 
 life
 
 of a citizen, by an outlawry, in this state, than to inflict a slighter punishment, by outlawry, on a subject, m England,
 
 (a)
 

 If bare precedents establish a mere form of words with so much weight, though the judges were clearly of opinion, that “ they began against law, reason, and common sense,” and that “ there was not a color, originally, to hold these words to be necessary,” and where the penalty is so far inferior— how much more ought they to be regarded, and how religiously ought the express injunctions of a law, wisely and benevolently intended to guard against loose proceedings, to be revered, when those proceedings are to consign a fellow-citizen to
 
 death ?
 

 So “ critical ” have the judges in England been with respect to outlawries, those vindictive supplements to a severe code of criminal jurisprudence,
 
 (b)
 
 that the use of figures to denote time, as in the return in the present case, or the addition or omission of a single letter, as in this return the writing “Doane” for “Doan,” has been held a good objection for reversal.
 
 (c)
 

 IV. It appears very doubtful also, whether the issuing a warrant for the execution of Aaron Doan, would be a regular procedure, for the following considerations: 1st, Because, there never has been “ an instance in Pennsylvania of a person being executed upon outlawry, by judicial proceedings alone,” though the “ Act for the advancement of justice,” &e., was passed near seventy years ago. 2d, Because, not only would such a prosecution to death be more sanguinary, than the law then was in England, but would also oppose that mild system, which the constitution of this commonwealth has adopted. 3d, Because, it would weaken that security, which the constitution appears to have intended for its citizens ; it being a dangerous mbde of proceeding, that if admitted, ought to be regulated by the exactest cautions ; as a precedent of this kind,- established in times of tranquillity, may become a very destructive engine of policy, in times less peaceable. 4th, Because, it seems to be unnecessary, the penalty — “ forfeiture of lands and tenements, goods and chattels,” expressed in the act, appearing to be a sufficient punishment, where guilt is not proved in the usual manner. 5th, Because, the “ Act for the advancement of justice,” &c., is too obscurely worded. That act, in preceding parts, enumerates many capital offences, and some not capital, though very heinous, in every case of both kinds mentioning the punishments to be respectively inflicted on the criminals, the modes of trial, and the judgments to be given.
 

 It then goes on, in the 17th section, to proceedings of outlawry, with much inaccuracy of expression and confusion of meaning. The words am not, as the honorable judges have stated, that “the party indicted of a
 
 *94
 
 capital offence, not yielding his body to the sheriff, shall be outlawed and attainted,” &c., but, that “ any person indicted or appealed for any of the said crimes, &c., without any distinction between offences “ capital ” or not capital.
 

 Afterwards, in directing the proclamations, a new subject, not before mentioned in the act, is introduced into it, and the “ person so indicted or appealed is to answer, &c., of the treason, felony or
 
 trespass,
 
 whereof he is so indicted or appealed.” This clause is immediately succeeded by another, that refers to all offences whether capital, not capital, or only trespasses, and makes the same provision in them all — “ if he who is so indicted or appealed, comes not at the said day of return of the said
 
 capias,
 
 and yield his body to the sheriff, he shall be, by the justice of the said supreme court, qironouneed outlawed and attainted of the crime whereof he is so indicted or appealed as aforesaid. And from that time, shall- forfeit and lose all his lands and tenements, goods and chattels : which forfeiture and
 
 all other
 
 forfeitures expressed or implied by the said judgments, to be given upon the said capital offences mentioned in this act, after such criminals’ just debts and reasonable charges of their maintenance in prison, are deducted shall go, one-half to the governor for the time being, towards support of this government, and for defraying the charges of prosecution, trial and execution of such criminals ; and the other half or residue thereof shall go to such criminal’s wife and children,” &c.
 

 Thus, the words “ which forfeiture ” refer to “ trespasses ” as well as to “ capital offences,” and then, by á faulty connexion with the words “ other forfeitures ” — which “ other forfeitures ” rest on principles totally different, that is, on “trials and judgments” before directed in the act, carry forward the confusion, until, by grammatical construction, the words “ which forfeiture ” are made to relate to the word “ execution,” in cases not capital, and even in cases of “ trespass,” which indubitably was never intended by the legislature.
 

 The words of the act just cited, and which seem to have had an influence on the honorable judges, to wit, “ upon the said capital offences mentioned m this act,” plainly refer to the “ other forfeitures and judgments,” which had been prescribed and directed in parts of the act prior to that, which treats of outlawry.
 

 Indeed, the honorable judges, for sustaining a construction, that couples the word “ execution ” with the punishment of outlaws, seem to have relied on an “implication,” to them appearing “most necessary, evident and strong,” but still an “implication.” This distinction claims attention. The “ other forfeitures ” mentioned in the act depend on “ the offences being capitalthe forfeiture on outlawry, does not.
 

 Lastly,
 
 The act, by giving no direction on the point, leaves involved in great obscurity the question — in what county the party is to be executed, when the offence is charged to be committed, the indictment is found, and the proclamations are made in
 
 one
 
 county, and he is outlawed and attainted in
 
 another
 
 — which is the present case.
 
 (a)
 

 (a)
 

 Council having determined not to issue a warrant for execution, did not formally, pass these resolutions, which were submitted to them by their learned and humane President.
 

 (b)
 

 4 Bl. Com. 320. “ It seems generally agreed, that
 
 infrnor of
 
 life, an outlawry of
 
 treason or felony
 
 might be avoided by plea, that the defendant was in prison, or in the king's service beyond sea, &c., at the time of the outlawry pronounced against him. But I take it to be generally agreed, that no outlawry for any other crime (against a party rightly described) can be avoided by the plea of any matter of fact whatever.” 2 Hawk. P. C. 460. “ By
 
 Magna Oharta,
 
 no man can be outlawed, but according to
 
 the laxo of the land.'’
 
 1 Bl. Com. 142.
 

 (c)
 

 4 Baeon’s Abr. 441.
 

 (a)
 

 2 Hale’s P. C. 203, p. 4; 3 Bac. 767, 772; 4 Burr. 2559. The return says, “I have caused public proclamation to be made, in manner and form as within I am commanded.” “This is certainly too loose; the proclamations are not sufficiently set out for the court to judge, whether they were properly made or not. I thought this error fatal.” Lord Mansfield, in
 
 Wilkes’s case;
 
 and tho error would have been “fatal ” if proclamations had been necessary in that case; but from peculiar circumstances they were not necessary. In
 
 Aaron Doan’s
 
 case they arc acknowledged to have been necessary. They are the most essential parts of the whole proceedings. Indeed, by the act of assembly on which this outlawry is founded, the
 
 exigí facias
 
 and
 
 the writ of proclamation
 
 are combined. The distinct nature of them is stated in 3 Bl. Com. 283, 284, &c., and in the Appendix, 16, 17, &c. “I beg to be understood that I ground my opinion
 
 singly
 
 upon the authority of the cases adjudged; which as they are on the favorable side, in a criminal case highly penal, I think, ought not to be departed from; and therefore, I am bound to say, that for want of those technical words, the outlawry ought to be reversed.” Lord Mansfield, in
 
 Wilkes’s case.
 
 The other three judges spoke
 
 seriatim;
 
 and concurred with the chief justice.
 
 A multo
 
 fortiori, the
 
 positive
 
 terms of a
 
 law,
 
 in a case vastly more penal,
 
 ‘■'■ought not to he departed from.”
 

 (b)
 

 Alder
 
 was outlawed for murder. The sheriff returned — “at my county court held at D., in the county of Northumberland,” and did not say, “at my county court of Northumberland, held, &c.,” and this was holden to be error; 2 Roll. Rep. 52, cited by I ord Mansfield, with several other cases of the like purport, in
 
 Wilkes's case.
 

 “ If an outlawry bo returned, that the party was exacted (called) at three several times, in the tenth year of James, and that he was a fourth 'time exacted the fifth day of February, and did not appear, without mentioning any year, and was a fifth time exacted such a day in March, in the tenth year of James, although it may be intended that he was the fourth time exacted in the tenth year of James, yet the outlawry shall not be good by intendment.” 2 Roll. Abr. 803; 2 Hale P. C. 203. If any intendment or implication could support an outlawry, this seems to have been sufficient
 

 (a)
 

 4 Burr. 2563, &c.
 

 (b)
 

 Qj)
 
 “Either from a want of attention to these principles (of truth and justice, the feelings of humanity, and the indelible rights of mankind, in the first concoction of the laws, and adopting in their stead the impetuous dictates of avarice, ambition and revenge ; from retaining discordant political regulation, which successive conquerors or factions have established !n the various revolutions of government,” &c. 4 Bl. Com. 3
 

 (c)
 

 Style, 182, 334; Cro. Eliz. 204; Cro. Jac. 576; 3 Bac. 767.
 

 (a)
 

 See the act of 23d September 1791, 3 Sm. Laws, 87, regulating the process upon outlawries.