**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Jesse WADE, Appellant.**

**Commonwealth of Pennsylvania,**
**Appellee**

v.

**Jesse Wade, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 3, 2011.

Filed Nov. 18, 2011.

Karl Baker, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney and Jonathan M. Levy, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: BOWES, GANTMAN, and LAZARUS, JJ.

OPINION BY BOWES, J.:

Jesse Wade appeals from the judgment of sentence of ten to twenty years incarceration to be followed by two years probation imposed by the trial court after his convictions for robbery-threat of serious bodily injury, robbery of a motor vehicle, fleeing and eluding police, terroristic threats, and two counts each of possessing an instrument of crime ("PIC") and recklessly endangering another person ("REAP"). We affirm.

The trial court set forth the pertinent facts as follows.

On September 13, 2008, at approximately 11:20 p.m., Christopher Kevorkian, the Complainant, exited his apartment with Greg Lewin, a friend, and Kevorkian's dog. They approached Kevorkian's vehicle, a red 1996 Oldsmobile, which was parked at the corner of Cresson Street and Indian Queen Lane. Kevorkian noticed that the driver's door key lock had been "punched out", and he saw the Appellant sitting in the driver's seat. Kevorkian saw items from his glove compartment and armrest strewn about the interior of the car. Aided by street and house lights, Kevorkian clearly saw the Appellant's face. Standing between one and two feet from the driver's door, Kevorkian demand that Appellant get out of his car. In response, the Appellant opened the door and threatened to shoot Kevorkian, Lewin, and Kevorkian's dog if Kevorkian did not leave. Kevorkian then walked back to his apartment building while calling the police on his cell phone. Once inside the building, Kevorkian put his dog inside the apartment. Kevorkian returned outside one minute later, where he observed his car still parked at the same location. Shortly thereafter, the Appellant sped away in Kevorkian's car.

At approximately 11:30 p.m., Officer Brian Laureano arrived on the scene. Kevorkian gave Laureano a description of the Appellant and the vehicle. Kevorkian described the Appellant as a young (20–24 years old) African American male, approximately 5'–10"–5'–11", thinly built, and wearing a white t-shirt

and blue jeans. Laureano then relayed this information over police radio.

At 1:27 a.m. on September 14, 2008, Officer Brian Geer, driving south on Chew Avenue, saw the Appellant pull the red Oldsmobile in front of his vehicle. The Appellant then drove up onto a sidewalk, made a U-turn, and drove north on Chew Avenue. Officer Geer activated his siren and lights. Geer followed the Appellant for two blocks, observed him go through a red light, and pulled the car over. As Geer approached the vehicle, he ordered the Appellant to turn off the ignition. The Appellant, who had one hand underneath the ignition, told the officer through the open driver's door window that he could not turn off the vehicle. As Geer came closer, the Appellant sped away northbound on Chew Avenue.

Officer Geer pursued the Appellant while informing a police radio dispatcher that he needed assistance. When Geer reached Hortter Street, he saw a man standing on the corner near a damaged vehicle. Geer stopped his vehicle for three to five seconds to make sure the man was not injured. After the man conveyed that he was not injured, Geer resumed his pursuit. Meanwhile, Officer Lewis responded to Geer's assistance call by pursuing the Appellant eastbound on Pleasant Street. In order to say out of Officer Lewis's way, Geer stayed on Chew Avenue paralleling the chase.

Meanwhile, Officer Lydia Anabogu was parked at Chew Avenue and Pleasant Street when she heard Geer over the radio. Anticipating that the Appellant might drive in her direction, Officer Anabogu waited in her vehicle on Chew Avenue. She eventually saw the Appellant in her rearview mirror traveling southbound on Chew. As he approached Officer Anabogu, the Appellant suddenly swerved, struck Anabogu's vehicle, and caused damage to her driver's door and rear quarter panel. However[,] Anabogu was still able to pursue the Appellant. At trial, Anabogu identified the Appellant as the driver who rammed into her vehicle.

Immediately following the collision, Officer Geer saw the Appellant's and Officer Anabogu's vehicles pass in front of him at Chew Avenue and Vernon Street. Officer Geer saw the Appellant in the Oldsmobile's driver's seat and confirmed at trial that the Appellant was the same man he had initially pulled over for the traffic violation.

Farther up Chew Avenue, Officer Joseph Mason was sitting in his patrol car at the intersection of Chew Avenue and Johnson Street. Officer Mason turned his lights and siren on and blocked the traffic on Johnson Street in order to keep Chew Avenue clear of civilian traffic. Mason eventually saw the Appellant driving towards him on Chew Avenue. As the Appellant approached Mason, the two men made eye contact. The Appellant suddenly swerved toward Mason, crossed the southbound bicycle and parking lanes, drove into the intersection's crosswalk, and sideswiped Mason's car. After the Appellant struck Officer Mason's car, he veered back into the opposing traffic's southbound lane.

When the Appellant veered back into the southbound lane, a black Mercedes, with a civilian driver and passenger, was also traveling in the southbound lane (in the correct direction). In an attempt to avoid the Appellant, who was driving on the wrong side of the road, the driver of the Mercedes pulled into the northbound lane and stopped his vehicle partially in a parking space. After the Mercedes stopped, the Appellant then intentionally veered into the northbound lane and hit

the Mercedes. After the collision, the Appellant's car ricocheted into a car parked on the southbound lane's shoulder. Both vehicle fronts were crumbled up to the windshield. Officer Geer removed the Appellant, who was unconscious, from the Oldsmobile and placed him under arrest.

The police transported the Appellant to Einstein Hospital. The police later told Kevorkian what had happened and drove him to the hospital to see if he could identify the person who stole his car. As the hospital staff wheeled the Appellant by on a stretcher, Kevorkian positively identified the Appellant as the person who stole his car. Kevorkian testified that he recognized Appellant immediately upon seeing his face again.

Trial Court Opinion, 10/27/10, at 3–6.

After his arrest, Appellant filed an omnibus pre-trial motion seeking to suppress the victim's out-of-court identification as unduly suggestive. The suppression court declined to suppress the identification holding that based on the totality of circumstances the victim's identification was reliable. Specifically, the suppression court reasoned that the victim had sufficient time to observe Appellant, that the area was well lit by house and street lights and the interior light of the vehicle illuminated when the victim confronted Appellant. Additionally, the court highlighted that the victim testified that he was especially observant at the time because Appellant threatened his life as well as that of his friend and dog. Also, the court noted that the victim provided an accurate description of Appellant to police and demonstrated no uncertainty when identifying Appellant at the hospital. Lastly, the

court set forth that the identification occurred shortly after the crime.

Following the suppression ruling, Appellant proceeded to a jury trial. The jury returned not guilty verdicts on two aggravated assault counts related to his driving of the stolen vehicle into the police cruisers, but found Appellant guilty of the remaining charges.[1] Thereafter, the court sentenced Appellant to seven to fourteen years imprisonment for robbery-threat of serious bodily injury, followed by a consecutive sentence of two to four years incarceration for robbery of a motor vehicle, and an additional one to two year sentence for fleeing or attempting to elude an officer. Hence, Appellant's aggregate jail sentence was ten to twenty years. In addition, the court imposed a two year probationary sentence for the REAP charge. The court did not impose any further penalty on the remaining convictions.

After sentencing, Appellant filed a motion for reconsideration related to the two robbery sentences. Prior to the court rendering a decision on that motion, Appellant filed a timely appeal at the other case numbers pertaining to the remaining charges herein. The court directed Appellant to file and serve a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellant requested and received permission to file that statement after the court resolved his motion for reconsideration. The court denied Appellant's motion for reconsideration, Appellant appealed that decision, and filed his 1925(b) statement. The trial court authored a Pa. R.A.P. 1925(a) opinion. The matter is now ready for our review.

Appellant raises the following issues for our consideration.

---

1. The trial court granted a motion for judgment of acquittal relative to charges pertaining to the driver and passenger inside of the Mercedes because neither victim appeared to testify at trial.

1. Did not the lower court abuse its discretion, err as a matter of law and violate appellant's rights to due process under the Federal and state constitutions by denying his motion to suppress the complainant's tainted out-of-court and in-court identifications where the initial confrontation was brief and at night, the identification confrontation was badly flawed because, inter alia, the police told the complainant in the interim that they caught the perpetrator and he had to identify him; and there was no independent basis to allay the taint?

2. Did not the lower court err as a matter of law in assigning an offense gravity score of 4 for the conviction of possession of an instrument of crime, 18 Pa.C.S. § 907, where the guidelines are clear that under the facts of this case the guidelines score was actually 3?

3. Did not the lower court err as a matter of law in permitting the jury to return a verdict of guilty to two counts of possessing an instrument of crime where there was only one possessory act?

4. Did not the lower court violate appellant's right under the Pennsylvania Constitution not to be put twice in jeopardy by imposing consecutive sentences for robbery and robbery of a motor vehicle and is not 42 Pa.C.S. § 9765 violative of both the double jeopardy and separation of power clauses of the Pennsylvania Constitution as it compels the unconstitutional result herein?

Appellant's brief at 3.

■ Appellant's first challenge is to the trial court's ruling regarding the admissibility of the victim's out-of-court and in-court identifications. Appellant argues that the out-of-court identification was impermissibly suggestive and tainted because police told the victim that they had apprehended the person who stole his vehicle and the victim's initial observation of Appellant was at night and brief. Concomitantly, Appellant submits that the subsequent in-court identification was improper based on the taint from the previous identification.[2]

The Commonwealth counters that officers at the hospital did not inform the victim that the individual in custody was the person responsible for stealing his car, and that show-up identifications with one suspect in a hospital are not inherently suggestive. According to the Commonwealth, the victim testified that police did not tell him that the person in custody was the individual who stole his vehicle. The Commonwealth maintains that the testimony by the victim that an officer told him over the telephone "we have some good news and we have some bad news. We have the person who took your car, but your car was totaled," N.T. Suppression Hearing, 11/12/09, at 21, did not unfairly influence the identification process.

Additionally, the Commonwealth asserts that even if the out-of-court identification was improper, the victim's in-court identification had a sufficiently independent basis to render it admissible. Like the suppression court, the Commonwealth points out that the initial confrontation occurred when the victim could view Appellant because there was street, house, and interior car lighting. Additionally, the victim was only a few feet from Appellant, whose face was uncovered. Lastly, the victim's description of the defendant was accurate

---

**2.** Appellant advances several other positions that he did not raise below related to eyewitness identification studies. He has waived those arguments. Pa.R.A.P. 302(a).

and his subsequent identification unequivocal.

■ Our standard and scope of review in evaluating a suppression issue are settled.

> We are limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. We may consider the evidence of the witnesses offered by the Commonwealth, as verdict winner, and only so much of the evidence presented by [the] defense that is not contradicted when examined in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court were erroneous.

*Commonwealth v. Feczko*, 10 A.3d 1285, 1287 (Pa.Super.2010) (*en banc*). This Court analyzed the issue of suggestiveness and one-on-one identification in *Commonwealth v. Moye*, 836 A.2d 973 (Pa.Super.2003), as follows.

> The purpose of a "one on one" identification is to enhance reliability by reducing the time elapsed after the commission of the crime. *Commonwealth v. Bullock*, 259 Pa.Super. 467, 393 A.2d 921 (1978). "Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors." *McElrath*, 592 A.2d at 742. As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: "the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the

perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation." *McElrath*, 592 A.2d at 743 (citation omitted). The corrupting effect of the suggestive identification, if any, must be weighed against these factors. *Commonwealth v. Sample*, 321 Pa.Super. 457, 468 A.2d 799 (1983). Absent some special element of unfairness, a prompt "one on one" identification is not so suggestive as to give rise to an irreparable likelihood of misidentification. *Commonwealth v. Brown*, 417 Pa.Super. 165, 611 A.2d 1318 (1992).

*Id.* at 976. Moreover, an in-court identification may be admissible despite the inadmissibility of a pre-trial identification where the in-court identification is not tainted by the prior identification. *Commonwealth v. Baker*, 531 Pa. 541, 614 A.2d 663 (1992). "In gauging reliability, we employ a totality of circumstances test." *Id.* at 668.

Assuming *arguendo* that the out-of-court identification was improper because police informed the victim that they arrested his assailant, we hold that the trial court properly admitted the in-court identification and Appellant is not entitled to relief. Approximately two hours after Appellant took the victim's car, police captured Appellant in the same vehicle that he stole. The victim observed Appellant from a close distance under not only street and house lights, but with the interior lights of his vehicle illuminating Appellant's face. The court also credited the victim's testimony that he was particularly observant at the time of the incident since Appellant threatened his dog, him, and his friend. Finally, the witness provided an accurate description.[3] Viewing all of the evidence

---

**3.** The victim described Appellant as a twenty to twenty-four year old African American male, approximately 5'–10"–5'–11", thinly built, possible facial hair, and wearing a

together, we agree that an independent basis from the out-of-court identification existed so as to allow the victim to identify Appellant in court. Thus, Appellant's first issue fails.

■ In Appellant's second issue, he assails the trial court's calculation of the offense gravity score for his PIC convictions. Since the court did not sentence Appellant for his commission of that crime, the claim is moot and irrelevant.

■ Appellant next asserts that the court erred in allowing the jury to convict him on two counts of PIC based on his striking of multiple police officer's vehicles with the stolen car where he committed only one possessory act. According to Appellant, his possession of the car was a single continuous act. Appellant maintains that since there was no separation between his crashing of the car into multiple police officers, he could only be convicted of one possessory offense. He posits that *Commonwealth v. Andrews*, 564 Pa. 321, 768 A.2d 309 (2001), is instructive. The Commonwealth agrees that *Andrews* controls, but reasons that Appellant has waived the issue based on that decision. We agree.

Therein, our Supreme Court upheld two PIC convictions based on the defendant's possession of a firearm during two separate robberies that the defendant alleged were part of a continuous criminal transaction. The *Andrews* Court differentiated between possessory firearms offenses and PIC, noting that the touchstone of liability for PIC is the defendant's criminal purpose, *i.e.*, if there are multiple criminal

objectives the person may be convicted of multiple PIC charges.

Before getting to the merits of the defendant's argument, the *Andrews* Court was faced with determining whether the issue of multiple convictions for the inchoate crimes of conspiracy and PIC was a legality of sentence or sufficiency issue. More precisely, the underlying question was whether the defendant had multiple criminal objectives, which would permit sentencing on the multiple convictions. The Court held that since this determination was fact driven, the issue went to the sufficiency of the evidence. It then stated that where there was a question as to the continuous nature of the crime and whether there was more than one criminal act, the question must be submitted to the jury via appropriate jury instruction.

Applying *Andrews* to this case required Appellant to raise the issue before jury deliberations so that the court could instruct the jury that it needed to determine if Appellant's act of crashing the stolen car into multiple police cruisers consisted of one or two acts of PIC. Having failed to timely raise the issue, Appellant has waived this claim. *See Andrews, supra.*[4]

■ The final position leveled by Appellant is that his convictions for robbery-threat of serious bodily injury and robbery of a motor vehicle merge for sentencing purposes and that the merger statute is violative of Pennsylvania's prohibition against double jeopardy. Merger questions implicate the legality of sentence. *Commonwealth v. Baldwin*, 604 Pa. 34, 985 A.2d 830 (2009). Additionally, the constitutionality of a statute presents a pure

---

white t-shirt and blue jeans. When apprehended, Appellant, an African American male, was twenty years of age and wearing a white tank top. The only alleged inaccuracy was that Appellant did not have facial hair. However, the victim indicated that there was only

a possibility that the perpetrator had facial hair.

4. The Court in *Andrews* declined to find waiver because conflicting precedent existed at that time.

question of law. Therefore, our standard of review is *de novo* and scope of review plenary. *Id.* at 833; *Commonwealth v. Omar,* 602 Pa. 595, 981 A.2d 179, 185 (2009). Whether 42 Pa.C.S. § 9765 violates Article 1, § 10 of the Pennsylvania Constitution is a matter of first impression.

■■■ Statutes are presumed constitutional. *Commonwealth v. Craven,* 572 Pa. 431, 817 A.2d 451 (2003). Appellant carries the heavy burden of showing that the statute clearly, palpably, and plainly violates the bar against double jeopardy. *See Commonwealth v. Brown,* 26 A.3d 485 (Pa.Super.2011). The statute at issue in the instant case reads

### § 9765. Merger of sentences

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. In *Baldwin, supra,* our Supreme Court held that § 9765 prohibits the merger of sentences unless a strict two-part test is met. First, the convictions must be based on a single criminal act. Second, all of the statutory elements of one of the offenses must be included in the statutory elements of the other.

Before the passage of § 9765, our Supreme Court discussed the doctrines of merger and double jeopardy in *Commonwealth v. Anderson,* 538 Pa. 574, 650 A.2d 20 (1994). The *Anderson* Court was faced with determining whether aggravated assault merged with attempted murder. It determined that the operative question was whether the crimes were greater and lesser-included offenses. This query, it held, was identical to an analysis of whether the double jeopardy clause of the federal constitution was violated. Citing to *Commonwealth v. Tarver,* 493 Pa. 320, 426 A.2d 569 (1981), and its reference to *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932),[5] the *Anderson* Court concluded that the proper inquiry "is whether the elements of the lesser crime are all included within the elements of the greater crime, and the greater offense includes at least one additional element which is different, in which case the sentences merge, or whether both crimes require proof of at least one element which the other does not, in which case the sentences do not merge." *Anderson, supra* at 24.

As our Supreme Court recognized in *Baldwin,* the legislature's adoption of § 9765 was a codification of the rule announced in *Anderson. Baldwin, supra* at 834–835 (discussing *Commonwealth v. Jones,* 590 Pa. 356, 912 A.2d 815 (2006) (OAJC)). Indeed, the Court in *Anderson* reasoned that "[t]he test depends solely on a comparison of the elements of the crimes charged, not on the similarity or even the identity of the evidence introduced at trial to establish their commission. . . . Only when all the elements of one crime are also elements of the other may they be classified as the 'same offense.' " *Anderson, supra* at 23 n. 2.

Appellant submits that robbery-threat of serious bodily injury and robbery of a motor vehicle are cognate offenses, that the facts leading to his convictions for each

---

5. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) was a statutory interpretation case that set forth a rule of statutory construction and did not discuss or cite the federal double jeopardy clause. *See Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).

crime were identical, and that the merger statute, 42 Pa.C.S. § 9765, is unconstitutional as applied. With respect to this latter claim, Appellant recognizes that § 9765 precludes a successful statutory merger claim. Accordingly, he contends that the elemental-only approach prescribed by § 9765 violates the Pennsylvania constitutional bar against double jeopardy. Appellant argues that robbery of a motor vehicle is a species of robbery and "[t]he separateness of the offense colloquially known as carjacking is a distinction without a difference." Appellant's brief at 30. According to Appellant, the statute impermissibly "fails to recognize and accommodate the constitutional mandate that "no person shall, for the same offense, be twice put in jeopardy of life or limb[.]" Appellant's brief at 32 (bracket in original). Since Appellant stole only the vehicle in the presence of the victim by threat of physical harm, he asserts that sentencing him twice for the same actions is a violation of the Pennsylvania Constitution. *See* Pa. Const. Art. 1 § 10.

The Commonwealth responds first by setting forth that both robbery-threat of serious bodily injury and robbery of a motor vehicle contain additional elements from one another. Simply put, robbery-threat of serious bodily injury does not require a taking of a vehicle and robbery of a motor vehicle does not mandate proof of a threat of serious bodily injury. Secondarily, the Commonwealth argues that the facts establish two separate criminal acts. The Commonwealth asserts that the crime of robbery was complete when Appellant threatened the victim with serious bodily injury while attempting to steal the car. In contrast, the Commonwealth opines that the robbery of a motor vehicle was not completed until Appellant physically drove the vehicle away ten or fifteen minutes later.

Next, the Commonwealth contends that whether a crime is a cognate offense of another bears no relationship to the merger test and that Appellant's bare assertion that § 9765 is unconstitutional "fails to present a state constitutional claim." Commonwealth's brief at 32. Finally, the Commonwealth points out that the test for merger and double jeopardy in this context are identical; hence, even if the statute were determined to be unconstitutional, Appellant's claim would fail since neither crime is a lesser-included offense of the other.

Initially, we reject the Commonwealth's highly technical and novel argument that two separate criminal acts were at issue herein. Although creative, the analysis is untenable when closely examined. To demonstrate, imagine for example that Appellant was unable to get the car started after threatening the victim and exited the vehicle ten to fifteen minutes later, leaving the car parked. Would the Commonwealth not have charged Appellant with robbery of a motor vehicle? Perhaps not, but we believe that it would have been well within its authority to charge Appellant based on those facts. This is because Appellant took physical control over the vehicle in the presence of the victim. While in this hypothetical he did not drive the vehicle away, he nonetheless maintained illegal possession of the car from its rightful possessor in that person's presence. The fact that the car had not yet been removed does not indicate that a taking had not occurred. Indeed, "taking" is described as the "act of seizing an article, with or *without removing it*, but with an implicit transfer of possession or control." Black's Law Dictionary, 1467 (7th ed.1999) (emphasis added); *see also Commonwealth v. George*, 705 A.2d 916, 919–920 (Pa.Super.1998). Thus, we find the Commonwealth's argument that the robbery of the motor vehicle was not complete until Appellant drove the

vehicle away, and therefore there were separate criminal acts, unavailing.

Second, we disagree that Appellant has made a bare assertion that § 9765 unconstitutionally violates Pennsylvania's bar against double jeopardy. Appellant has discussed the applicable statute, its application in *Baldwin*, as well as Chief Justice Castille's concurring decision in *Baldwin* discussing his view of merger. In addition, Appellant has referenced and discussed *Anderson, supra*, our Supreme Court's seminal pronouncement on merger prior to the *Baldwin* case. While we acknowledge that Appellant has not strictly followed the command of *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991),[6] for arguing that Pennsylvania's double jeopardy provision is distinct from its federal counterpart, it is nevertheless a position that at least one justice of our Supreme Court has indicated has potential merit, and is deserving of consideration. Of course, insofar as Appellant alleges a violation of the separation of powers, we are in complete agreement with the Commonwealth that Appellant has utterly failed to make that argument.

Further, the Commonwealth is on strong precedential footing when it maintains that the two robbery crimes are not greater and lesser-included offenses and that the merger and double jeopardy tests are identical. *Anderson, supra*.[7] Pointedly, there is no dispute by the parties that under the elemental approach adopted by our legislature and discussed by our Supreme Court in *Baldwin*, Appellant's merger claim would fail. The crux of the issue is whether an elemental approach is incongruous with Pennsylvania's prohibition against double jeopardy under the precise facts of this case. We undertake this examination with the *Edmunds* factors in mind and, for the reasons that follow, hold that the statute as applied in the case *sub judice* does not violate Pennsylvania's prohibition against double jeopardy.

Article 1, § 10 reads in relevant part, "No person shall, for the same offense, be twice put in jeopardy of life or limb." Similarly, the federal constitutional provision states, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. In *Commonwealth v. Bostic*, 500 Pa. 345, 456 A.2d 1320, 1322 n. 4 (1983),

**6.** The *Edmunds* Court stated,

[A]s a general rule it is important that litigants brief and analyze at least the following four factors:
1) text of the Pennsylvania constitutional provision;
2) history of the provision, including Pennsylvania case-law;
3) related case-law from other states;
4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.
Depending upon the particular issue presented, an examination of related federal precedent may be useful as part of the state constitutional analysis, not as binding authority, but as one form of guidance. However, it is essential that courts in Penn-

sylvania undertake an independent analysis under the Pennsylvania Constitution.
*Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887, 895 (1991).

**7.** The position that courts should view merger and double jeopardy analysis as identical has come under scholarly scrutiny. *See* Anne Bowen Poulin, *Double Jeopardy and Multiple Punishment: Cutting the Gordian Knot*, 77 U. Colo. L.Rev. 595 (2006); Bruce A. Antkowiak, *Picking Up the Pieces of the Gordian Knot: Towards a Sensible Merger Methodology*, 41 New Eng. L.Rev. 259 (2007). These authors make a compelling argument that merger in almost all instances is an issue of statutory construction and not constitutional jurisprudence. *See also Commonwealth v. Harper*, 512 Pa. 155, 516 A.2d 319 (1986) (Papadakos, J. concurring).

our Supreme Court opined that "the double jeopardy proscription embodied by the Fifth Amendment of the United States Constitution is coextensive with that embodied by Article I, section 10 of the Pennsylvania Constitution." This, however, has not always been accurate.

The Pennsylvania prohibition against double jeopardy was inserted into the Pennsylvania Constitution in 1790 and for much of the history of Pennsylvania was interpreted only to apply to multiple *prosecutions* for capital cases. *Commonwealth v. Henderson*, 482 Pa. 359, 393 A.2d 1146 (1978); *Commonwealth v. Baker*, 413 Pa. 105, 196 A.2d 382 (1964) citing *McCreary v. Commonwealth*, 29 Pa. 323 (Pa.1857)[8]; *see also Commonwealth v. Cook*, 6 Serg. & Rawle 577 (Pa.1822). Perhaps unsurprisingly, from 1718 until 1790, crimes such as rape, robbery, arson, and burglary were punishable by death. *Hackett v. Commonwealth*, 15 Pa. 95 (1850); *Respublica v. Doan*, 1 Dall. 86, 1 L.Ed. 47 (1784) (upholding execution of defendant convicted of robbery).[9] As of 1794, capital punishment was barred in all cases except for specific intent and felony murder. *Commonwealth v. Carbone*, 375 Pa.Super. 261, 544 A.2d 462, 466 n. 1 (1988) *reversed on other grounds*, 524 Pa. 551, 574 A.2d 584 (1990). Yet, our High Court did not immediately expand our double jeopardy clause to multiple prosecutions of non-capital offenses

let alone multiple punishment cases. Indeed, even after the United States Supreme Court incorporated the Fifth Amendment bar against double jeopardy to apply to the states via the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), a majority of the Pennsylvania Supreme Court declined to extend Article 1, § 10 to multiple prosecutions of non-capital offenses. *See Henderson, supra;*[10] *see also Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712, 726 n. 2 (1977) (Nix J. dissenting), *abrogated by Tarver, supra.*

Further, even in one of the initial cases to set forth that the federal constitution and our state constitution were largely coextensive, our Supreme Court recognized that Pennsylvania's double jeopardy clause applied only to capital cases and "[t]he protection against successive prosecutions in non-capital cases was provided in this jurisdiction by the statutory pleas in bar of autrefois acquit and autrefois convict, Act of Mar. 31, 1860, P.L. 427 s 30; 19 P.S. 463." *Commonwealth v. Hogan*, 482 Pa. 333, 393 A.2d 1133, 1137 (1978) (OAJC). Accordingly, the Court held that "there is no basis for suggesting that the framers of our Constitution intended to provide a greater protection than that afforded under the Fifth Amendment." *Id.* at 1138. Nonetheless, federal double jeop-

---

**8.** Interestingly, the defendant's argument in *McCreary v. Commonwealth*, 29 Pa. 323 (Pa. 1857) was that, because burglary subjected a person to possible capital punishment in 1718, the prohibition against double jeopardy was intended to apply to burglary even after the legislature reduced the punishment.

**9.** In 1682, the death penalty was abolished in colonial Pennsylvania for all crimes except willful or premeditated murder. That provision lapsed in 1718. *See Commonwealth v. Carbone*, 375 Pa.Super. 261, 544 A.2d 462, 466 n. 1 (Pa.Super.1988) *reversed on other grounds*, 524 Pa. 551, 574 A.2d 584 (1990).

**10.** Only one justice in *Commonwealth v. Henderson*, 482 Pa. 359, 393 A.2d 1146 (1978) expressly dissented on the ground that the previous decisions determining that double jeopardy applied solely to capital offenses were erroneous. Pennsylvania apparently was the sole state to limit its double jeopardy clause to capital crimes. *See Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432, 436 n. 14 (1973) *vacated on other grounds by Pennsylvania v. Campana*, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973).

ardy protection has been extended to multiple punishments for the same offense, *i.e.*, sentencing merger. At a minimum, our constitution must uphold the protections engrafted onto the states by the federal constitution. *See Edmunds, supra.*

United States Supreme Court jurisprudence has held that multiple *punishments* for offenses that are the same is constitutionally permissible unless there is a clear legislative intent against such a practice. *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). As the Supreme Court stated in *Hunter,* "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Hunter, supra* at 366, 103 S.Ct. 673. Moreover, our Supreme Court has held

> The [federal] double jeopardy provision does not restrain the legislature in its role in defining crimes and fixing penalties. Its intendment is to prevent courts from imposing more' than one punishment under the legislative enactment and restraining prosecutors from attempting to secure that punishment in more than one trial. Where consecutive sentences are imposed at a single trial, double jeopardy prevents the court from exceeding its legislative authorization by imposing multiple punishments for the 'same offense.' (citation omitted).

*Tarver, supra* at 572. Viewing these cases together, one can readily discern that the federal prohibition against double jeopardy

does not apply where a state legislature defines merger statutorily so long as the *Blockburger* test is not violated. Our merger statute merely codified the adoption by the *Tarver/Anderson* decisions of the *Blockburger* test and upholds the long-standing merger doctrine relative to greater and lesser-included offenses.

Instantly, robbery-threat of serious bodily injury and robbery of a motor vehicle each requires proof of a fact that the other does not. As we have previously provided, robbery of a motor vehicle does not require that a person be threatened with serious bodily injury and robbery-threat of serious bodily injury does not include the element of stealing or taking a vehicle. Therefore, the two robbery crimes at issue in the present case are not the same offense under the *Blockburger* test. Thus, only if our constitution provides broader protections than the federal constitution can Appellant's claim succeed.

In at least one context, our Supreme Court has interpreted the Pennsylvania constitutional provision against double jeopardy to provide broader protections than does the federal constitution. *See Commonwealth v. Smith,* 532 Pa. 177, 615 A.2d 321, at 325 (1992) (finding intentional prosecutorial misconduct designed to prejudice the defendant so that he is denied a fair trial will prevent re-trial). *Smith,* however, involved multiple prosecutions, not multiple punishments imposed after a single proceeding for the "same offense." Pointedly, Pennsylvania courts have historically viewed merger of punishments and Pennsylvania double jeopardy claims separately.[11] For example, in one of the earliest Pennsylvania cases to discuss merger, our Supreme Court reasoned that

11. Merger of offenses fell under the ambit of double jeopardy where one crime was included in another and upon prosecution for the greater offense a conviction or acquittal was obtained. In that instance, prosecution on the lesser offense was barred. *Commonwealth ex rel. Moszczynski v. Ashe,* 343 Pa. 102, 21 A.2d 920, 922 (1941).

punishment on both a greater and lesser offense would be unjust, but did not mention double jeopardy. *Harman v. Commonwealth,* 12 Serg. & Rawle 69, *4 (Pa. 1824) ("if he was guilty of the rape, he must have been guilty of the assault, with intent to ravish; and if he was not guilty of the assault, with the intent to ravish, he could not be guilty of the rape.... It would have been unjust, however, to punish him for the assault, which was merged in the greater offence of rape").

It was not until the decision in *Tarver, supra,* that sentencing merger and federal double jeopardy were conclusively viewed together. *See Sparrow, supra* at 719 n. 8, *abrogated by Tarver, supra* ("This Court has not had occasion to consider the question whether, following application of the Fifth Amendment's Double Jeopardy Clause to the states in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), our 'merger' decisions might satisfy the requirements of federal double jeopardy law."); *see also Sparrow, supra* at 727 (Nix, J. dissenting) ("the majority has chosen not to analyze the problem arising in this case in accordance with double jeopardy principles, but instead relies on a cursory application of this jurisdiction's merger doctrine to determine that robbery and murder are separate crimes, which do not merge, so that separate sentences are proper.").

The Court in *Tarver,* for the first time, held that the underlying felony in a felony murder case merged with the murder charge and sentencing on both convictions constituted a violation of the federal double jeopardy clause. *See also Commonwealth v. Harper,* 512 Pa. 155, 516 A.2d 319, 326–327 (Papadakos, J. concurring) ("*Tarver* effected a major change in the law. Since 1794, when Pennsylvania first adopted the felony-murder rule, trial judges felt free to sentence particularly heinous criminals to concurrent or consecutive sentences for the felony as well as to impose the mandatory life sentence."); *Commonwealth v. Campana,* 452 Pa. 233, 304 A.2d 432, 448 n. 11 (1973) (Pomeroy, J. dissenting) *reversed by Pennsylvania v. Campana,* 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973).

There is nothing in the text of our constitution, the case law interpreting the Pennsylvania double jeopardy clause, or more modern Pennsylvania or federal jurisprudence that reveals that the Pennsylvania Constitution affords greater double jeopardy protections in the merger of sentencing arena than does the federal constitution. Since the double jeopardy clause in the Pennsylvania Constitution originally applied only to multiple prosecutions in capital cases and not sentencing merger, the framers of the Pennsylvania constitution never intended to restrict the legislature, via our double jeopardy clause, from defining merger of sentence issues.

In conclusion, having reviewed the federal and state clauses, as well as pertinent Pennsylvania and federal authority, we find no evidence to suggest that Article 1, § 10 prohibits the legislature from defining merger in a purely elemental fashion. Since the merger statute does not violate double jeopardy and robbery of a motor vehicle and robbery-threat of serious bodily injury are not greater and lesser-included offenses, Appellant's claim fails.

Judgment of sentence affirmed.

Judge GANTMAN Concurs in the Result.