J-S29008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JUNIOR BRIGNOL :
:
Appellant : No. 3854 EDA 2016

Appeal from the Judgment of Sentence October 12, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-00011815-2009

BEFORE:   PANELLA, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY PANELLA, J.          **FILED SEPTEMBER 11, 2018**

Junior Brignol challenges the judgment of sentence entered in the Philadelphia County Court of Common Pleas. We affirm Appellant's conviction for criminal conspiracy, 18 Pa.C.S.A. § 903(a)(1). But we must vacate his judgment of sentence and remand for resentencing based on ***Alleyne v. United States***, 570 U.S. 99 (2013), and ***Commonwealth v. Valentine***, 101 A.3d 801 (Pa. Super. 2014).

The relevant facts and procedural history of this case are as follows. Dawud Keitt was waiting for a friend outside of a convenience store in Philadelphia. Mr. Keitt noticed a car stopped at a red light for 15-20 seconds. There were five men in the car. One passenger pointed at Mr. Keitt, who began walking down the street in the opposite direction. The car made a U-turn and

_____

* Former Justice specially assigned to the Superior Court.

stopped, and its occupants alighted and followed Mr. Keitt. He glanced over his shoulder as he heard one of the men shout, "Shoot him. Get him!" He began running as he saw Appellant raise a gun in his direction. Mr. Keitt was shot once in the leg. He spotted Appellant fleeing after firing the gun.

Police responded to the scene, and called for medical assistance. Mr. Keitt provided a description of the car and its occupants. Moments later, police stopped the car and arrested two men still inside. Police later apprehended Appellant and another suspect. The officers brought the men to the hospital where Mr. Keitt was being treated, and he identified Appellant as the shooter.

Appellant filed a motion to suppress Mr. Keitt's identification, which the court denied. After a mistrial due to juror illness, a second jury convicted Appellant of criminal conspiracy, and acquitted him of attempted murder and related charges. The court sentenced him to a mandatory minimum of 5-10 years' incarceration. Appellant's direct appeal rights were later reinstated *nunc pro tunc*, and this timely appeal followed.

Appellant claims the police told Mr. Keitt they arrested everyone from the vehicle. Appellant posits this statement compelled Mr. Keitt to identify one of the men brought to his hospital room as the shooter. Appellant argues the court erred by denying his suppression motion, as the identification procedures were unfairly tainted. We disagree.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the

- 2 -

prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

***Commonwealth v. Eichinger***, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted).

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." ***Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa. Super. 2003) (citation omitted).

In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable. The purpose of a 'one on one' identification is to enhance reliability by reducing the time elapsed after the commission of the crime. *Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors*. As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation. The corrupting effect of the suggestive identification, if any, must be weighed against these factors. Absent some special element of unfairness, a prompt one on one identification is not so suggestive as to give rise to an irreparable likelihood of misidentification.

***Commonwealth v. Moye***, 836 A.2d 973, 976 (Pa. Super. 2003) (citations and most internal quotation marks omitted; emphasis added). "Moreover, an in-court identification may be admissible despite the inadmissibility of a pre-

trial identification where the in-court identification is not tainted by the prior identification." ***Commonwealth v. Wade***, 33 A.3d 108, 114 (Pa. Super. 2011) (citation omitted).

We find ***Wade*** instructive here. In that case, the victim saw Wade sitting in the driver's seat of the victim's car. Though it was nighttime, the victim could clearly see Wade's face due to nearby street and house lights. The victim ordered Wade to get out of his car, and Wade threatened to shoot him in response. Wade then sped off in the car, leading police on a chase before ultimately crashing the vehicle. After the crash, police told the victim they had apprehended the man who stole his vehicle, and asked him to come to the hospital to identify him. The victim identified Wade at the hospital, and again during Wade's trial.

Wade challenged the out-of-court and in-court identifications. The trial court denied his suppression motion. On appeal, the panel held that, even assuming the out-of-court identification was improper because police told the victim they had apprehended the man who stole his car, the in-court identification was sufficiently independent. ***See id***., at 114-115. The ***Wade*** panel noted the victim observed Wade from a close, well-lit distance; the victim testified he paid particular attention to Wade because Wade threatened him; and the victim's description of Wade was accurate. ***See id***., at 114.

Here, Mr. Keitt testified at the suppression hearing. He identified Appellant as the man who shot him. ***See*** N.T. Suppression, 10/25/11, at 27. Mr. Keitt stated that on the day he was shot, he was walking down the street

at around 1:45 p.m. and noticed a car of men driving slowly next to him. *See id*., at 28. The car stopped, and he had an unobstructed view of the men in the vehicle, including Appellant. *See id*., at 31. He saw one man in the vehicle point to him; he identified the man pointing at him as Appellant's nephew. *See id*. Mr. Keitt began quickly walking away, just as he saw three of the men exit the vehicle and heard one shout, "Get him, shoot him, shoot him." *Id*., at 30.

He looked back, and saw Appellant, gun in hand, chasing him. *See* N.T. Suppression, 10/25/11, at 30. Appellant followed him down two blocks, while Mr. Keitt periodically looked over his shoulder at his pursuer. *See id*., at 31. Appellant fired a shot at him, which missed, and then a second shot, which hit Mr. Keitt in the back of the leg. *See id*. Before collapsing, he saw Appellant running away. *See id*., at 31.

While Mr. Keitt was being treated in the hospital for his gunshot wound, an officer told him the police apprehended "everybody that was … in the car." *Id*., at 36. Officers escorted four handcuffed men into his hospital room for identification. *See id*., at 33. He identified one of the men as an accomplice, and identified Appellant as the shooter. *See id*., at 34.

The suppression court acknowledged the officer's statement about apprehending "everybody" could be suggestive. Nevertheless, the court observed that Mr. Keitt credibly testified "with an extreme degree of certainty as to who his assailant was, and his level of certainty was not shaken on cross-examination." N.T. Suppression, 10/25/11, at 48. And, we note that despite

the police informing Mr. Keitt they apprehended "everybody," Mr. Keitt only positively identified two of the men shown to him as involved in the shooting. **See id**., at 34-35. Based on the factors enumerated in **Moye** and **Wade**, we find the court did not err by denying Appellant's suppression motion. **See Moye**, 836 A.2d at 976; **Wade**, 33 A.3d at 114.

Turning to Appellant's second issue, he challenges the imposition of his mandatory minimum sentence as unconstitutional under **Alleyne**.

In **Alleyne**, the United States Supreme Court held any facts that lead to an increase in a mandatory minimum sentence are considered elements of the crime, which must be presented to a jury and proven beyond a reasonable doubt. **See** 570 U.S. at 103. Where "application of a mandatory minimum sentence gives rise to illegal sentence concerns, even where the sentence is within the statutory limits, such legality of sentence questions are not waivable." **Valentine**, 101 A.3d at 809 (citation and brackets omitted). Further, "[t]he United States Supreme Court has held that when a decision of this Court results in a new rule, that rule applies to all criminal cases still pending on direct review." **Commonwealth v. Newman**, 99 A.3d 86, 90 (Pa. Super. 2014) (citations omitted).

Appellant was sentenced under 42 Pa.C.S.A. § 9712(a). As both parties and the trial court recognize, this specific statute, which required a five-year mandatory minimum for offenders who visibly possessed a firearm during the commission of a crime of violence, was held unconstitutional by a panel of this Court in **Valentine**, 101 A.3d at 812. This rendered Appellant's sentence

illegal. Consequently, we are constrained to vacate Appellant's judgment of sentence, and remand for resentencing without application of the mandatory minimum.

Conviction affirmed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/11/18