J-A24007-19

2020 PA Super 37

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                            :            PENNSYLVANIA
                            :
          v.                :
                            :
                            :
MARK EDWARDS            :
                            :
          Appellant      :   No. 3693 EDA 2017

Appeal from the Judgment of Sentence Entered July 25, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0011484-2015

BEFORE:   BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

OPINION BY BENDER, P.J.E.:          **FILED FEBRUARY 12, 2020**

Appellant, Mark Edwards, appeals from the judgment of sentence of an aggregate term of 10-25 years' imprisonment, imposed after he was convicted of aggravated assault, 18 Pa.C.S. § 2702(a)(1), and related offenses.  For the reasons that follow, we reverse four of his convictions, vacate the judgment of sentence, and remand.

The trial court summarized the relevant factual and procedural history as follows:

> [O]n Saturday, August 15, 2015, just before 7:00 p.m., a tan 2004 Ford Mercury Grand Marquis occupied by a single male driver travelled at a high rate of speed and struck a moving vehicle occupied by two adults and one child in a residential neighborhood near the corners of Large Street and Magee Avenue in Northeast Philadelphia.  Eyewitnesses observed that following the striking of the first occupied vehicle, the vehicle, … [the] Marquis, then continued to travel erratically at a high rate of speed and without stopping, turned from Magee Avenue and onto the 6600 block of

---

[*] Retired Senior Judge assigned to the Superior Court.

Sylvester Street[,] where it collided with multiple parked vehicles along the way.

After hitting numerous parked cars, witnesses saw this same vehicle strike a six[-]year[-]old child who had been riding her bike and playing on the sidewalk near her home located within the same block. The force of the collision sent this slight and small child flying into the air and landing head first in a neighbor's side garden. Appellant … was then observed unsuccessfully attempting escape by driving the vehicle into another parked car[,] which blocked his exit. Appellant was seen immediately thereafter leaping from the driver's side of the car and running on foot away from the path of destruction he caused.

The injured child's mother, Nuris Quezada, reported that just before the crash she heard the screeching of an approaching vehicle as it swerved and sped down the 6600 block of Sylvester Street where she was standing in front of her home. As she saw the vehicle striking numerous parked cars, she ran immediately toward her daughter in an attempt to pull her from the sidewalk to safety. To her horror, she could not save her daughter due to the high rate of speed of the striking vehicle. She thought her daughter had died because she was found unconscious in the neighbor's yard. As Nuris Quezada ran to her daughter[,] she saw the back of the male driver of the striking vehicle as he exited the driver['s] side of the otherwise unoccupied vehicle and [ran] away from his misdeeds.

Najah Imani Caldwell testified that she had fully viewed the tan Marquis speed down the street, crash into a number of parked cars, hit a child[,] and then hit another parked car. She saw Appellant alight from the driver's side of the otherwise unoccupied Marquis and flee on foot. Her view was unobstructed, and … close to the collision scene from the front steps of her residence located within the 6600 block of Sylvester Street. She was a teenager at the time who bravely came forward, provided a detailed description of the offender[,] and rode around the area with responding police officers to search for the man she saw operating the striking vehicle. She later unequivocally identified Appellant as the perpetrator. She consistently and positively identified Appellant at the preliminary hearing and at trial as the operator of the striking vehicle and as the man who she had seen jump out

from the driver's side of the Marquis and run away from the crash site.[1]

After several preliminary hearings, arraignment, and scheduling conferences, the case against [Appellant] proceeded to trial without a jury on April 21, 2017….

Over the course of the trial, the Commonwealth introduced compelling and varied forms of direct and circumstantial evidence from uniformed police officers, assigned investigators[,] the child victim, her mother[,] and other eyewitnesses to Appellant's actions. At trial, all of the medical records reflecting treatment of the child victim, who sustained traumatic injury to her head and a multi-fractured arm, as well as the damage reports concerning all involved vehicles[,] had been entered into the record by way of stipulation and stated agreement between the parties. At trial, the victim's mother reported that he[r] daughter's broken arm had never fully recovered despite medical treatment. Mercifully, this child reported that she has little memory of what happened to her. This [c]ourt, as the finder of fact, entered verdicts of guilt for all offenses charged after reviewing all submitted physical evidence and listening to the testimony and arguments presented.

This [c]ourt found Appellant … guilty of the following offenses in order of gradation: one count of Aggravated Assault under 18 [Pa.C.S.] § 2702[(a)(1)], graded as a Felony of the First Degree; one count of Aggravated Assault-By Vehicle under 75 [Pa.C.S.] § 3732.1[(a)], graded as a Felony of the Third Degree; one count of Accident[s] Involving Death or Personal Injury under 75 [Pa.C.S.] § 3742[(a)], graded as a Felony of the Third Degree; two counts of Criminal Mischief-Tampering With Property under 18 [Pa.C.S.] § 3304[(a)(2)], graded as Felony of the Third Degree; two counts of Criminal Mischief-Tampering With Property under 18 [Pa.C.S.] § 3304[(a)(2)], graded as Misdemeanors of the Second Degree; one count of Simple Assault-Attempt or Cause Bodily Injury to Child, under 18 [Pa.C.S.] § 2701[(a)(1)], graded as a Misdemeanor [of the] First Degree; one count of Recklessly Endangering Another Person [(REAP)] under 18 [Pa.C.S.] §

_____

[1] As discussed further *infra*, Appellant contests the accuracy of the trial court's description of Ms. Caldwell's testimony. Specifically, he claims that Ms. Caldwell did not identify him at the preliminary hearing. **See** Appellant's Brief at 13. Further, he asserts that the record contradicts the trial court's finding that Ms. Caldwell had an unobstructed view. **Id.** at 14 n.5.

2705[,] graded as a Misdemeanor [of the] Second Degree; one count of Accident[s] Involving Damage Attended Vehicle/Property under 75 [Pa.C.S.] § 3743[(a)], graded as a Misdemeanor [of the] Third Degree; and Possessi[ng] Instrument[s] of Crime under 18 [Pa.C.S.] § 907[(a)], graded as a Misdemeanor of the First Degree.

As the presiding trial judge, this [c]ourt directed the completion of Presentence Evaluations and Mental Health Evaluations by the First Judicial District Probation and Parole and Mental Health Departments, and scheduled the sentencing hearing in due course. After conducting a thorough review of all completed presentence and mental health evaluations, victim impact statements, and correspondence submitted on behalf of Appellant[,] and considering all relevant data and live testimony submitted at a full and fair sentencing hearing, this [c]ourt imposed the following sentences:

Count 1: 18 [Pa.C.S.] § 3304[(a)(2)]-Criminal Mischief-Tampering With Property, M2: Minimum six (6) months['] supervised term of confinement to maximum twelve (12) months['] confinement, to run consecutively to Count 9;

Count 2: 75 [Pa.C.S.] § 3742[(a)]-Accident[s] Involving Death or Personal Injury, F3: A determination of guilty with no further penalty;

Count 3: 75 [Pa.C.S.] § 3732.1[(a)]-Aggravated Assault by Vehicle, F3: A determination of guilty with no further penalty;

Count 4: 18 [Pa.C.S.] § 2705-[REAP], M2: Minimum six (6) months['] supervised term of confinement to maximum twelve (12) months['] confinement, to run consecutively to Count 1;

Count 5: [75 Pa.C.S. § 3743(a)]-Accident[s] Involving Damage Attended Vehicle/Property, M3: A determination of guilty with no further penalty[;]

Count 6: 18 [Pa.C.S.] § 3304[(a)(2)]-Criminal Mischief-Tampering With Property, M2: Minimum six (6) months['] supervised term of confinement to maximum twelve (12) months['] confinement, to run consecutively to Count 4;

Count 7: 18 [Pa.C.S.] § 3304[(a)(2)]-Criminal Mischief-Tampering With Property, F3: Minimum six (6) months['] supervised term of confinement to maximum twelve (12) months['] confinement, to run consecutively to Count 6;

Count 8: 18 [Pa.C.S.] § 3304[(a)(2)]-Criminal Mischief-Tampering With Property, F3: Minimum six (6) months['] supervised term of confinement to maximum twelve (12) months['] confinement, to run consecutively to Count 7;

Count 9: 18 [Pa.C.S.] § 2702[(a)(1)]-Aggravated Assault, F1 (Cause Serious Bodily Injury): Minimum seven (7) years and six (6) months of state supervised term of confinement to maximum twenty (20) years['] confinement;

Count 10: Simple Assault[, 18 Pa.C.S. § 2701(a)(1)], M2-A determination of guilty with no further penalty[.]

The resulting aggregate sentence was a minimum period of ten (10) years to a maximum period of twenty-five (25) years of incarceration, with credit accorded for custodial time served. Appellant was ordered to have no contact with the Commonwealth witnesses. Rehabilitative conditions were imposed including participation in anger management classes, vocational training, employment, dual diagnosis evaluation and treatment, and drug and alcohol screening. Submission to random drug and alcohol testing and home visits were also imposed along with payment of regular fines and costs. Restitution was ordered in the amount of $3,724.00[,] based upon the reported aggregate insurance deductible payments submitted by each automobile owner. No restitution had been requested on behalf of the child that had been injured. [Appellant] was deemed "RRRI"[2] and "Boot Camp" ineligible.

Trial Court Opinion (TCO), 10/16/2018, at 2-6.

Appellant filed a timely post-sentence motion, which was denied by the trial court on October 18, 2017. On November 17, 2017, Appellant filed a timely notice of appeal. Subsequently, on January 22, 2018, the trial court

---

[2] "RRRI" is an abbreviation for the Recidivism Risk Reduction Incentive program, 61 Pa.C.S. §§ 4501-4512.

ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal "within [21] days from the entry of this [o]rder, or [21] days after the [n]otes of [t]estimony are available, whichever is later." Order, 1/22/2018. On February 12, 2018, Appellant requested an extension to file his statement until March 2, 2018, which the trial court granted. On March 1, 2018, Appellant filed a preliminary Rule 1925(b) statement, as well as a request for permission to file a supplemental Rule 1925(b) statement after he received all of the notes of testimony.[3] Although Appellant claims that the trial court granted him permission to do so, **see** Appellant's Brief at 5-6, the docket does not demonstrate that it ruled on this request. Nevertheless, Appellant filed a supplemental Rule 1925(b) statement on July 2, 2018.[4] The trial court addressed the issues raised in both of Appellant's concise statements in its Rule 1925(a) opinion.

---

[3] Appellant did not attach a transcript order form to this request, and did not file the request at least five days before the statement was due. **See** Pa.R.A.P. 1925(b)(2)(ii) ("If a party has ordered but not received a transcript necessary to develop the Statement, that party may request an extension of the deadline to file the Statement until 21 days following the date of entry on the docket of the transcript in accordance with Pa.R.A.P. 1922(b). The party **must** attach the transcript purchase order to the motion for the extension. If the motion is filed **at least five days** before the Statement is due but the trial court does not rule on the motion prior to the original due date, the motion will be deemed to have been granted.") (emphasis added); **see also** Pa.R.A.P. 1925(b)(2)(i) ("Upon application of the appellant and for good cause shown, the judge **may** enlarge the time period initially specified or permit an amended or supplemental Statement to be filed.") (emphasis added).

[4] The record is also not clear as to when the notes of testimony required by Appellant became available.

Presently, Appellant raises the following issues on appeal:

1. Was not the evidence insufficient to convict of all charges, as the sole evidence linking [A]ppellant to the crimes was an unreliable identification by one witness who had a poor opportunity to observe the perpetrator, gave a barebones description to police, and identified [A]ppellant based only on his clothing and the fact that he had brown skin?

2. Was not the evidence insufficient to convict [A]ppellant of four counts of criminal mischief under 18 Pa.C.S.[] § 3304(a)(2) because damaging a car as a result of a car accident does not constitute "tampering"?

3. Was not the evidence insufficient to convict [A]ppellant of two counts of criminal mischief (F3) and two counts of criminal mischief (M2) where the Commonwealth failed to prove the required amount of pecuniary loss on each count?

4. Was not the evidence insufficient to convict [A]ppellant of two counts of criminal mischief (F3) and two counts of criminal mischief (M2) where he was not proven to have the requisite intent to cause pecuniary loss?

5. Should not the sentences for aggravated assault and [REAP] have merged where 1) the two offenses meet the elements test set out in 42 Pa.C.S.[] § 9756; and 2) assuming *arguendo* the elements test was not met, Section 9756 is unconstitutional on its face and as applied, as it conflicts with the Pennsylvania judicial test for merger and violates separation of powers and double jeopardy rights under the Pennsylvania Constitution?

Appellant's Brief at 3-4.

At the outset, we need not consider whether Appellant has preserved for our review the issues raised in his second, supplemental Rule 1925(b) statement, as Appellant raised all of the issues we address *infra* in his initial Rule 1925(b) statement.[5]

---

[5] We do not address certain issues raised in Appellant's statement of questions involved because our disposition herein has rendered them moot.

<u>**Issue 1**</u>

In Appellant's first issue, he argues that "[t]he evidence was insufficient to prove [him] guilty of any of the charged offenses, as the sole evidence linking him to the crimes was one identifying witness who had a minimal opportunity to observe the perpetrator and who based her identification of Appellant on his baggy pants and 'brown' skin." ***Id.*** at 11 (unnecessary capitalization omitted). Appellant explains that the witness — Najah Imani Caldwell — had "only a fleeting view of the perpetrator" and provided a "vague description" to police that the perpetrator was "a skinny black male in his 20s, wearing a white T-shirt." ***Id.*** at 15. He adds that "[t]he weak evidentiary value of Ms. Caldwell's identification is due not only to the vague and commonplace description she provided, but also to the unduly suggestive circumstances surrounding the identification." ***Id.*** at 16. He elaborates that, "[w]hen [Ms. Caldwell] was eventually transported to the location where [Appellant] was being detained, he was standing outside of a police car, with two officers next to him. It was 'close to nighttime' and from the inside of the sergeant's car, which was 15 to 20 feet from [Appellant], Ms. Caldwell identified him as the perpetrator." ***Id.*** at 16-17 (citations omitted). Appellant asserts that Ms. Caldwell was unable to identify him at the preliminary hearing and, "on cross-examination [at trial], she conceded that she was told prior to trial that the person she identified on the night in question would be present

in the courtroom." *Id.* at 17.[6] Moreover, Appellant contends that "the Commonwealth introduced no evidence that corroborated Ms. Caldwell's identification of [Appellant] as the perpetrator. There was no physical evidence, no other witness[] testimony, and no incriminating statements or conduct by [Appellant] linking him in any way to the incident." *Id.* Thus, Appellant claims that, "[g]iven Ms. Caldwell's minimal opportunity to observe, the extremely vague description she provided, her stated basis for identifying [Appellant] (ubiquitous baggy pants and brown skin), the suggestivity of her post-incident identifications, her inability to make an identification at the preliminary hearing, and the lack of any corroborating evidence, the proof that [Appellant] was indeed the perpetrator of the charged crimes was so weak that any verdict of guilt thereon must [be] the product of speculation or conjecture." *Id.* at 18 (citations omitted).

We apply the following standard of review to sufficiency-of-the-evidence claims:

> The standard we apply … is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not

---

[6] Our review of the preliminary hearing transcript confirms that Ms. Caldwell was not able to identify Appellant at that time. N.T. Hearing, 11/13/2015, at 29. *See also* Commonwealth's Brief at 4 (acknowledging that "[a]t the preliminary hearing, which took place about three months after the collision, [Ms. Caldwell] stated that she was unable to recognize the driver") (citation omitted).

preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Orr***, 38 A.3d 868, 872-73 (Pa. Super. 2011) (citations and emphasis omitted).

Additionally, we acknowledge:

Evidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. Out-of-court identifications are relevant to our review of sufficiency of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh. Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight.

***Commonwealth v. Kinney***, 157 A.3d 968, 971 (Pa. Super. 2017) (citations omitted). We note that "[a] challenge to the weight of the evidence is distinct from a challenge to the sufficiency of the evidence in that the former concedes that the Commonwealth has produced sufficient evidence of each element of the crime, but questions which evidence is to be believed." ***Id.*** (citation omitted; brackets in original).

Here, Ms. Caldwell identified Appellant at trial as the man who, after striking the little girl, got out of the car and started running. ***See*** N.T. Trial,

- 10 -

4/21/2017, at 52-53.[7]  At the time of the incident, she explained that she was "sitting on [her] front step across the street" from where the girl was hit.  *Id.* at 54.  She said that was able to see Appellant get out of the vehicle and start running, testifying that he looked to be skinny, in his mid-20s, and African American.  *Id.* at 57-58.  Subsequently, police drove Ms. Caldwell to two different locations to view suspects.  *Id.* at 59-60.  At the first location, she stated that the man police showed her was not the person that struck the little girl because "he was heavyset.  The man [who struck the girl] wasn't heavyset."  *Id.* at 60.  Ms. Caldwell then testified:

> [The Commonwealth:] Now, the second time, are you also asked, is this the man that you saw strike the little girl?
>
> [Ms. Caldwell:] Yes.
>
> [The Commonwealth:] And what do you say then?
>
> [Ms. Caldwell:] Yes.
>
> [The Commonwealth:] Now, at that point in time[,] why are you saying yes?
>
> [Ms. Caldwell:] He had on the same clothing.  It's just happened not too long ago, so I remember his face.
>
> [The Commonwealth:] You remember his face --
>
> [Ms. Caldwell:] And the clothes he had on.

*Id.*

On cross-examination, Ms. Caldwell conveyed that it was Appellant's "clothes and his skin complexion" that helped her identify him, and recalled that he was "skinny" and had "a white T-shirt on with baggy jeans, baggy

---

[7] We note that the trial transcript bears the incorrect date (April 2, 2017).

pants." *Id.* at 62. When police took her to the second location to see if she could identify the perpetrator, she said the police did not tell her why they were taking her to that location. *Id.* at 63. Ms. Caldwell also testified that she identified Appellant at trial as the perpetrator because she recognized him, and not because somebody told her that the person that was arrested would be in the courtroom that day. *Id.* at 65. However, she agreed with Appellant's attorney that she "basically" had seen the back of the person who was running up the street. *Id.* at 75; *but see id.* at 81 (stating that she saw the "side of his face").

Further, at trial, Sergeant Melissa Panebianco testified that she asked Ms. Caldwell shortly after the incident whether she would be able to identify the driver of the vehicle, and Ms. Caldwell answered yes. *Id.* at 106. Sergeant Panebianco explained that "normally when I … drive a witness to a location, I just tell them just to remember what they saw at the scene and to do the best they can. And if they know for a fact, a hundred percent[,] that that is the person, they have to say so. If they are unsure, then they have to say that, as well." *Id.* at 109. When Ms. Caldwell identified Appellant, Sergeant Panebianco testified that Ms. Caldwell did not indicate that she was unsure or hesitate at all. *Id.*

Officer Gene Crozier also testified that he had received information that had led him to investigate Appellant. Specifically, he stated:

> [The Commonwealth:] And what did you do, when you became involved in this investigation?

[Officer Crozier:] Other officers responded to the scene, at which time they gave out the vehicle information, which was left at the scene of the accident…. [I t]ook that information and ran the tag through our system and it came back to an address of 6050 Lawndale Avenue and owner Naja Jones.

I went to that location and asked if she knew who was using her vehicle and she stated that she had left that vehicle in the position [*sic*] of a Shaquan Ellis. She gave me an address of 6610 Akron Street. From there[,] I went to Akron Street and came in contact with Shaquan Ellis who said that he –

    [Appellant's attorney]: Objection.

    [The court]: Sustained.

[The Commonwealth:] As a result of going to Akron Street, what did you do?

[Officer Crozier:] From Akron Street, based on information received at Akron Street, I went to the 1200 block of Robbins Avenue.

[The Commonwealth:] And you went to the 1200 block of Robbins Avenue. And what did you do there?

[Officer Crozier:] I double-parked my car and was met by [Appellant], who walked out to our vehicle from the house on that block.

…

[The Commonwealth:] And were you looking for [Appellant] at that point in time?

[Officer Crozier:] Yes.

[The Commonwealth:] He just walks out of his house and approaches the police?

[Officer Crozier:] Yes.

[The Commonwealth:] [W]hat do you do at that point in time? …

[Officer Crozier:] We had already at that point had a vehicle. Sergeant Panebianco was bringing over a witness from the original location, leaving the scene of the accident, who came over and positively ID'd [Appellant] at the location as the driver.

*Id.* at 115-17.

Based on the foregoing, we deem the identification evidence sufficient to sustain Appellant's convictions in this case. In addition to Officer Crozier receiving information linking Appellant to the offense, Ms. Caldwell confidently identified Appellant shortly after the incident occurred and again at trial. Although she did not recognize Appellant at the preliminary hearing and the circumstances surrounding her initial identification are admittedly not ideal, this Court has discerned that "any uncertainty in an eyewitness's identification of a defendant is a question of the weight of the evidence, not its sufficiency." *Commonwealth v. Cain*, 906 A.2d 1242, 1245 (Pa. Super. 2006) (deeming identification evidence sufficient, even though the witnesses expressed uncertainty in their identification at trial, where they had previously identified the appellant in a photo array and at a preliminary hearing); *see also Kinney*, 157 A.3d at 971-72 ("[The a]ppellant argues that the victims provided 'unconvincing' and 'vague' identifications and 'inconsistencies regarding the Commonwealth's physical evidence.' Such claims are directed entirely to the credibility of the victim's testimony, and, as such, challenge the weight, not the sufficiency, of the evidence.") (citations omitted).[8] Appellant has not

---

[8] Appellant relies on the cases of *Commonwealth v. Crews*, 260 A.2d 771 (Pa. 1970), and *Commonwealth v. Grahame*, 482 A.2d 255 (Pa. Super. 1984), to support the proposition that "[w]here identification evidence is shown to be so inherently unreliable as to make a verdict based upon it one of conjecture and surmise, it will be found insufficient as a matter of law." Appellant's Brief at 11; *see also id.* at 18-19. As the Commonwealth

challenged the weight of the evidence on appeal. Accordingly, no relief is due on this basis.

## Issue 2

In Appellant's second issue, he argues that "the evidence was insufficient to convict [him] of four counts of criminal mischief under 18 Pa.C.S.[] § 3304(a)(2) because damaging a car as a result of a car accident does not constitute 'tampering[.']" Appellant's Brief at 21 (unnecessary capitalization omitted). That statute provides, in pertinent part, that "[a] person is guilty of criminal mischief if he … intentionally or recklessly tampers with tangible property of another so as to endanger person or property[.]" 18 Pa.C.S. § 3304(a)(2).

In its opinion, the trial court discerned that "'tamper' plainly means to interfere with something in order to cause damage or make unauthorized alterations." TCO at 14. It determined that the evidence was sufficient to

---

observes, in **Crews**, "the eyewitness never identified the defendant as the perpetrator. Rather, she simply provided a general description of the perpetrators' height, complexion, and attire." Commonwealth's Brief at 11 n.2. Similarly, in **Grahame**, the Commonwealth ascertains that "the key witness was unable to identify the defendant before trial; she stated at the preliminary hearing that '[a]ll blacks look alike'; and at trial she testified that she didn't remember the defendant." **Id.** at 10 (citations omitted; brackets in original); **see also Grahame**, 482 A.2d at 259 ("The appellant … is connected to the crime by the identification testimony of [the key witness], who later stated that she did not get a good look at the third man; that she did not know who the third man was; and that she did not remember if [the appellant] was one of the robbers."). In contrast, in the case *sub judice*, the evidence supporting Appellant's identification was much stronger. Thus, **Crews** and **Grahame** are distinguishable.

- 15 -

sustain Appellant's convictions under Section 3304(a)(2) as "Appellant intentionally and recklessly tampered with or interfered with and caused significant damage to multiple vehicles as he intentionally and recklessly operated the Mercury Marquis at a high rate of speed over the span of at least two disconnected residential city[-]sized blocks without stopping until … [his] escape was impeded by the last vehicle impacted." *Id.*

On appeal, Appellant contends that, "[p]ursuant to the commonly understood meaning of the term 'tamper[,']' principles of statutory construction, and this Court's precedent, it is clear that recklessly crashing into another vehicle, even where damage or injury results, does not constitute 'tampering' and, thus, does not fall within the intended reach of [Section] 3304(a)(2)." Appellant's Brief at 9. In particular, he asserts that "Black's Law Dictionary defines 'tamper' as '1. [t]o meddle so as to alter (a thing), esp[ecially] to make changes that are illegal, corrupting or perverting. 2. To interfere improperly; to meddle.'" *Id.* at 22 (citing Black's Law Dictionary, 8th Ed. (2004); brackets added by Appellant). Further, he claims that "Pennsylvania courts have generally applied [Section] 3304(a)(2) to crimes of intentional alteration or vandalism, for example, cutting phone lines, damaging a competitor's combine by attaching iron pieces to his corn stalks, or manipulating tools to create a hole in a door lock." *Id.* at 23-24 (citations omitted). He points out that elsewhere in the Crimes Code — namely, in 75 Pa.C.S. § 3808(b) which concerns "Tampering with an ignition interlock system" — "the legislature used the word 'tampering' in a way that is

consistent with [its] normal usage, *i.e.*, to denote surreptitious or dishonest conduct." *Id.* at 23.[9]

Moreover, Appellant directs our attention to the rest of the criminal mischief statute, specifically Section 3304(a)(5), which provides that "[a] person is guilty of criminal mischief if he … intentionally damages real or personal property of another[.]"  18 Pa.C.S. § 3304(a)(5).  He asserts that, "looking at the [criminal mischief] statute in its entirety, as required by the principles of statutory construction, makes it particularly clear that the legislature did not intend for [S]ubsection (a)(2) to encompass cases, like the instant case, of merely causing damage." *Id.* at 25.  He elaborates that, "[i]f that were so, then [S]ubsection (a)(5) would subsume [S]ubsection (a)(2), because [S]ubsection (a)(5) only requires that property be damaged knowingly or intentionally." *Id.* (citation omitted).

_____

[9] That statute provides, in relevant part:

> The term "tampering," in addition to any physical act which is intended to alter or interfere with the proper functioning of an ignition interlock system required by law, shall include attempting to circumvent or bypass or circumventing or bypassing an ignition interlock system by:
>
> > (1) means of using another individual to provide a breath sample; or
> >
> > (2) providing a breath sample for the purpose of bypassing an ignition interlock system required by law.

75 Pa.C.S. § 3808(b).

Conversely, the Commonwealth attacks Appellant's argument that Section 3304(a)(2) requires proof that he committed acts of an intentional, surreptitious, or dishonest nature, asserting that "the plain language of the statute expressly includes intentional *and reckless* conduct." Commonwealth's Brief at 12 (emphasis in original). The Commonwealth observes that, "[a]lthough the General Assembly did not define 'tampers,' it modified the word to include an intentional or reckless level of culpability. To ignore this plain language … and interpret the statute as prohibiting only intentional acts, would violate settled principles of statutory construction and render the word 'reckless' superfluous." *Id.* at 13. Accordingly, the Commonwealth says that "any definition of 'tampers with' must be modified to include both intentional and reckless conduct[,]" and asserts that 'tamper' means "to interfere so as to weaken or change for the worse." *Id.* at 13, 13 n.3. With respect to Appellant's argument regarding the meaning of the word 'tamper' in the context of tampering with an ignition interlock system under 75 Pa.C.S. § 3808(b), it correctly observes that that provision does not include the word 'reckless,' and argues that "the legislature intended Section 3304(a)(2) of the criminal-mischief statute to proscribe a broader range of conduct than the intentional and surreptitious behavior described in Section 3808(b) of the Vehicle Code." *Id.* at 14.

Before delving into our analysis of these arguments, we acknowledge that:

[B]ecause statutory interpretation implicates a question of law, our scope of review is plenary and our standard of review is *de novo*.

When interpreting a statute:

Our task is guided by the sound and settled principles set forth in the Statutory Construction Act, including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S. § 1921(a). In pursuing that end, we are mindful that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Indeed, "[a]s a general rule, the best indication of legislative intent is the plain language of a statute." In reading the plain language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," while any words or phrases that have acquired a "peculiar and appropriate meaning" must be construed according to that meaning. 1 Pa.C.S. [§] 1903(a). However, when interpreting non-explicit statutory text, legislative intent may be gleaned from a variety of factors, including, *inter alia*: the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the contemporaneous legislative history. 1 Pa.C.S. § 1921(c). Moreover, while statutes generally should be construed liberally, penal statutes are always to be construed strictly, 1 Pa.C.S. § 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant.

***Commonwealth v. Hanna***, 124 A.3d 757, 759-60 (Pa. Super. 2015) (some citations and quotation marks omitted).

After careful review, Appellant has persuaded us that damaging a car as a result of a collision does not constitute 'tampering' under Section 3304(a)(2). Looking at the common and approved usage of the word 'tamper,' and keeping in mind that penal statutes are always to be construed

strictly, *see Hanna, supra*, we deem 'tamper' to mean more than merely damaging; instead, it signifies interfering with, meddling with, or altering something with the aim of changing it. Though Appellant had at least a reckless state of mind and certainly endangered people and property through his behavior, his act of colliding with and damaging cars while speeding through a neighborhood is not 'tampering.' He did not interfere, meddle with, or alter the cars in order to change them; he crashed into them as he sped away.

We also find convincing Appellant's argument that the legislature intended for 'tamper' and 'damage' to have different meanings. Section 3304(a)(5) penalizes someone who "intentionally **damages** real or personal property of another[,]" while the at-issue Section 3304(a)(2) penalizes someone who "intentionally or recklessly **tampers with** tangible property of another so as to endanger person or property[.]" 18 Pa.C.S. §§ 3304(a)(2), (a)(5) (emphasis added). The legislature's use of these terms indicates that it intended to define them differently. If not, Section 3304(a)(2) would appear to subsume the offense expressed in Section 3304(a)(5). *See* 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all of its provisions.").

In addition, we consider persuasive the recent, unpublished, non-precedential memorandum decision, ***Commonwealth v. Sewell***, 2019 WL

7290507 (Pa. Super. filed Dec. 30, 2019).[10]  In that case, Sewell was found

guilty of, *inter alia*, criminal mischief under Section 3304(a)(2), after he

reversed his vehicle and slammed into the front of a police car following the

police's discovery of a loaded handgun in his glove compartment, which he

was carrying without a license.  ***Id.*** at *1-2.  Sewell challenged the sufficiency

of the evidence supporting his conviction under Section 3304(a)(2), and this

Court reversed, explaining:

> [T]he trial court found the following relevant facts supported Sewell's criminal mischief conviction: "[Sewell] reversed his car and slammed [it] into the front of the officers' squad car. The squad car was pushed back several feet, narrowly missing [Officer] McPoyle as he moved behind [Sewell's] car to reposition himself next to [Officer] Fritz."
>
> Sewell claims that in order to be guilty of criminal mischief under Section 3304(a)(2), the Commonwealth must prove that the defendant "meddle[d] with or ma[d]e changes to tangible property."  We agree.  Here, Sewell did not tamper with the officers' police cruiser, or any tangible property for that matter; rather, he intentionally backed up and crashed into the vehicle, causing it to sustain body damage.  ***Cf. Commonwealth v. Herman***, 924 A.2d 1231 (Pa. Super. 2007) (where defendant cut telephone lines to grocery store, evidence was sufficient to sustain conviction under Section 3304(a)(2)); ***Commonwealth v. Zambelli***, 695 A.2d 848 (Pa. Super. 1997) (sufficient evidence to prove criminal mischief under Section 3304(a)(2) where defendant scratched side of parked van with object held between two fingers); ***Commonwealth v. Miller***, 339 A.2d 573 (Pa. Super. 1975) (Section 3340(a)(2) conviction affirmed where defendant cut legs off of base of fire tower causing tower to collapse onto power line and interrupt electrical service to community).  As Sewell correctly notes, his action would be properly charged as a Section 3304(a)(5) offense where one

---

[10] ***See*** Pa.R.A.P. 126(b) (providing that an "unpublished non-precedential memorandum decision of the Superior Court filed after May 1, 2019" may be cited for its "persuasive value").

> "intentionally **damages** real or personal property of another." **See** 18 Pa.C.S.[] § 3304(a)(5) (emphasis added); **see also** 1 Pa.C.S.[] § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions."). Because Sewell did not "tamper" with another's tangible property, we conclude that the evidence was insufficient to enable the trial judge, as fact finder, to find that all of the elements of criminal mischief under Section 3304(a)(2) were established beyond a reasonable doubt. Accordingly, we reverse Sewell's judgment of sentence for criminal mischief under Section 3304(a)(2).

**Id.** at *5 (some citations and footnote omitted; emphasis in original).

We acknowledge that the factual circumstances in **Sewell** are slightly different from those in the case *sub judice*, as Sewell intentionally reversed and crashed into the police car while Appellant may have hit the vehicles only recklessly.[11] Nevertheless, the **Sewell** Court determined that there was no evidence that Sewell tampered with the police car, only that he damaged it by backing up and crashing into it. Based on the foregoing, we conclude that damaging a car as a result of a collision does not constitute 'tampering' under Section 3304(a)(2). Therefore, we reverse Appellant's four convictions for criminal mischief.

## Issue 5

Because we reverse Appellant's criminal mischief convictions, we need not address his third and fourth issues. Instead, we proceed to Appellant's final claim, in which he avers that his sentences for aggravated assault and

---

[11] The trial court's finding is somewhat unclear in this regard. **See** TCO at 14 (stating that Appellant "**intentionally and recklessly** tampered with or interfered with and caused significant damage to multiple vehicles as he **intentionally and recklessly** operated the Mercury Marquis at a high rate of speed") (emphasis added).

REAP should have merged. *See* Appellant's Brief at 31. He states that "[t]he two offenses satisfy the elements test set out in 42 Pa.C.S.[] § 9756." *Id.* at 10. Nonetheless, according to Appellant, "[e]ven assuming *arguendo* that the statutory test was not met, [Section] 9756 conflicts with Pennsylvania courts' merger test and, therefore, is unconstitutional in that it violates separation of powers and double jeopardy rights under the Pennsylvania Constitution." *Id.*

We note that the trial court and the Commonwealth both agree that Appellant's sentences for aggravated assault and REAP should have merged. *See* TCO at 17-18; Commonwealth's Brief at 22. However, "[a] claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence. Therefore, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Cianci***, 130 A.3d 780, 782 (Pa. Super. 2015) (citations omitted).

This Court has previously determined that these two offenses do not merge, explaining:

> The Pennsylvania Crimes Code defines the crime of aggravated assault in pertinent part as follows:
>
> ### § 2702. Aggravated assault
>
> **(a) Offense defined.**—A person is guilty of aggravated assault if he:
>
> > (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]
>
> 18 Pa.C.S.[] § 2702(a)(1). REAP is defined as follows:

### § 2705. Recklessly endangering another person

A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S.[] § 2705. To sustain a conviction for REAP, "the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so. Danger, not merely the apprehension of danger, must be created." *Commonwealth v. Hopkins*, 747 A.2d 910, 915 (Pa. Super. 2000) (internal citation omitted).

Whether two offenses merge for sentencing now turns on Section 9765 of the Sentencing Code, which addresses merger and provides:

### § 9765. Merger of sentences

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.[] § 9765…. *See Commonwealth v. Coppedge*, 984 A.2d 562, 563 (Pa. Super. 2009) (stating cases decided before effective date of Section 9765 are not instructive in merger analysis; relevant question in merger analysis now is whether person **can** commit one crime without also committing other crime and vice[]versa, regardless of whether crimes arose from same set of facts; if elements differ, under legislative mandate of Section 9765, crimes do not merge).

Instantly, a conviction for aggravated assault requires a person, under circumstances manifesting extreme indifference to the value of human life, to (1) attempt to cause serious bodily injury to another, or (2) cause such injury intentionally, knowingly or recklessly. *See* 18 Pa.C.S.[] § 2702(a)(1). By contrast, to commit REAP, a person must recklessly engage in conduct which places or may place another person in **actual** danger of death or serious bodily injury. *See* 18 Pa.C.S.[] § 2705; *Hopkins*, *supra*. Aggravated assault contains an element missing from REAP — serious bodily injury or an attempt to cause serious bodily injury. On the other hand, an individual could recklessly place another

person in danger of serious bodily injury without attempting to cause (or actually causing) serious bodily injury, which would support a conviction for REAP, but not for aggravated assault. *See, e.g.*, *Commonwealth v. Vogelsong*, 90 A.3d 717 (Pa. Super. 2014) (affirming REAP conviction of defendant who twice let her horse wander unattended on busy roadway and consciously disregarded substantial risk of injury posed to passing motorists). Additionally, unlike aggravated assault, REAP requires the element of actual danger of death or serious bodily injury. An individual could attempt to cause serious bodily injury to another person without placing that person in actual danger, which would support a conviction for aggravated assault but not REAP. *See, e.g.*, *Commonwealth v. Lopez*, … 654 A.2d 1150 ([Pa. Super.] 1995) (holding defendant who discharged firearm into empty residence could be convicted of aggravated assault if he acted with intent to cause serious bodily injury to person he believed was in residence even though that person was elsewhere). Each offense requires proof of an element that is absent from the other offense, and one offense can be committed without committing the other offense.

*Cianci*, 130 A.3d at 782-83 (footnote omitted; emphasis in original).

Here, it is clear that Appellant's aggravated assault and REAP convictions arose from a single criminal act, namely, his striking the girl with his vehicle. *See* Appellant's Brief at 33; Commonwealth's Brief at 21. Thus, merger hinges on whether all of the statutory elements of REAP are included in the statutory elements of aggravated assault. While Appellant acknowledges the apparent impediment to relief that *Cianci* poses to him, he distinguishes it on the basis that the *Cianci* Court "held that [Section] 2702(a)(1) *generally* and REAP do not merge under [Section] 9765[. T]he panel was not presented with the narrower question, at issue here, of whether a conviction under the 'actually causing injury' portion of [Section] 2702(a)(1) merges with REAP." Appellant's Brief at 34. He elaborates that he "was not

convicted under the 'attempts to cause injury' portion of [Section] 2702(a)(1). He was convicted of 'actually causing injury' and consequently, he was subject to higher sentencing guidelines that correspond to that offense." *Id.* at 34-35.[12] Thus, he submits that the holding in *Cianci* does not apply to him as "the panel in *Cianci* considered the elements of the entire subsection of (a)(1) of [Section] 2702, and concluded that the 'attempts to cause injury' portion did not merge with REAP, because REAP requires placing another person in **actual** danger or death, whereas under the 'attempt' portion of [Section] 2702(a)(1), one could attempt to cause serious bodily injury to another without actually endangering that person." *Id.* at 34 (citation omitted; emphasis in original).

While Appellant's argument is clever, no relief is due. To begin, Appellant was not convicted of aggravated assault causing serious bodily injury; he was convicted of aggravated assault under Section 2702(a)(1) and ostensibly sentenced according to the sentencing guidelines for aggravated assault where serious bodily injury is caused. Further, Appellant proffers

_____

[12] Appellant claims that the trial court convicted him of aggravated assault actually causing injury because, when setting forth the sentences it imposed in its Rule 1925(a) opinion, it stated the following:

> Count 9: 18 [Pa.C.S. § 2702(a)(1)]-Aggravated Assault, F1 (Causes Serious Bodily Injury): Minimum [7] years and [6] months of state supervised term of confinement to maximum [20] years['] confinement[.]

TCO at 6; *see also* Appellant's Brief at 32; Commonwealth's Brief at 21.

meager authority and analysis to persuade us that we should apply Section 9765 by parsing out the precise portions of statutory sections (or subsections) supporting a defendant's convictions. Though Appellant cites to ***Commonwealth v. Baldwin***, 985 A.2d 830 (Pa. 2009), to facilitate this argument, ***see*** Appellant's Brief at 35, our review of that case leaves us unconvinced. In ***Baldwin***, our Supreme Court held that "a plain reading of Section 9765 reveals the General Assembly's intent that crimes with different statutory elements be punished separately." ***Baldwin***, 985 A.2d at 831. In applying Section 9765 in that case, our Supreme Court first considered what elements the Commonwealth needed to establish in order to sustain Baldwin's convictions under the at-issue statutes. ***See id.*** at 833 (explaining, for instance, that Baldwin's "conviction under [18 Pa.C.S. § 6106] required the Commonwealth to establish that [Baldwin] was either carrying a firearm in a vehicle or concealed on his person, and that he had no license to do so"). In its analysis, it did not parse out which specific portions of those particular statutes the Commonwealth actually proved and compare only those portions to one another to determine if merger was appropriate. ***Id.*** Instead, it looked at how each statute *could* be violated and thereby reached the conclusion that "merger is prohibited in this case because each offense includes an element the other does not." ***Id.*** at 834 (stating that "[t]o violate [18 Pa.C.S. § 6106], a defendant must either carry a firearm in a vehicle, or carry a concealed firearm on or about his person").

Similarly, the *Cianci* Court did not parse out which particular portions of the relevant aggravated assault subsection and REAP statute related to Cianci's circumstances. In more detail, Cianci was convicted of, *inter alia*, aggravated assault under Section 2702(a)(1) and REAP after he "started punching [his girlfriend] in the head, causing her to fall to the ground[,]" later "grabbed [her] hair and dragged her out of their bedroom into the kitchen[,]" and then punched her "in the face and head." *Cianci*, 130 A.3d at 781. Cianci's girlfriend subsequently sought treatment for her injuries, "which included an orbital blowout fracture, a swollen lip, and multiple bruises and scratches." *Id.* Like the *Baldwin* Court, the *Cianci* Court did not delineate which specific parts of the applicable subsection of the aggravated assault statute and REAP statute that Cianci violated. In other words, it did not specifically include, as part of its merger analysis, consideration of whether Cianci only *attempted to cause* his girlfriend serious bodily injury (rather than *actually causing* her such injury) under Section 2702(a)(1). By the same token, it did not contemplate whether Cianci recklessly engaged in conduct that *placed* his girlfriend in actual danger of death or serious bodily injury as opposed to whether his conduct only *may have* placed her in such danger. *See id.* at 782. Rather, it examined how the legislature defined the crimes in the statutory sections (or subsections) underlying Cianci's convictions, without accounting for which specific clauses of those sections (or subsections) applied to his case. In doing so, the *Cianci* Court ascertained that because an individual could commit aggravated assault under Section 2702(a)(1) without

committing REAP and vice versa, those offenses did not merge. *See id.* at 782-83.

Based on the above-stated precedent, we decline to include such particularized parsing of statutory sections (or subsections) in our merger analysis. As *Cianci* holds, because there are ways an individual *could* commit aggravated assault under Section 2702(a)(1) without committing REAP and vice versa, the elements of the two offenses are different and do not merge. That Appellant committed aggravated assault causing serious bodily injury while also committing REAP is inapposite to the merger analysis. Accordingly, we conclude that these offenses do not merge.

As an alternative argument, Appellant avers that his sentences for aggravated assault and REAP should merge because "[Section] 9756 conflicts with Pennsylvania courts' merger test and, therefore, is unconstitutional in that it violates separation of powers and double jeopardy rights under the Pennsylvania Constitution." Appellant's Brief at 10. He claims that, prior to the enactment of Section 9765, this Court had "repeatedly held that aggravated assault under [Section 2702(a)(1)] and REAP merge for sentencing purposes[,]" and adds that "the Pennsylvania Supreme Court has never adopted a merger test like [Section 9765] that depends entirely on the elements of offenses." *Id.* at 37. Consequently, he says that, "[i]n enacting [Section] 9765, the [l]egislature violated separation of powers by overruling judicial decisions by Pennsylvania's appellate courts." *Id.* at 38 (citation omitted). Furthermore, though Appellant recognizes that our Supreme Court

in **Baldwin** rejected a federal double jeopardy challenge to Section 9765, he insists that Pennsylvania's double jeopardy clause has sometimes been interpreted to provide more double jeopardy protections than its federal counterpart, and he therefore urges us to determine that Section 9756 violates the Pennsylvania Constitution. **See id.** at 39-40.

"[T]he constitutionality of a statute presents a pure question of law. Therefore, our standard of review is *de novo* and scope of review plenary." **Commonwealth v. Wade**, 33 A.3d 108, 115-16 (Pa. Super. 2011) (citations omitted). Moreover, we note that "[s]tatutes are presumed constitutional." **Id.** at 116 (citation omitted).

Appellant's constitutional arguments do not warrant relief. This Court has previously held that Section 9756 does not violate Pennsylvania's double jeopardy clause. **See Wade**, 33 A.3d at 121. Further, Section 9756 does not violate the separation of powers doctrine, as our Supreme Court has discerned that its "pre-Section 9765 jurisprudence characterized the merger doctrine as, first and foremost, a rule of statutory construction[,]" and double jeopardy protections serve "principally as a restraint on courts and prosecutors" while the legislature "remains free … to define crimes and fix punishments…." **Baldwin**, 985 A.2d at 835, 836. **See also Wade**, 33 A.3d at 121 ("Since the double jeopardy clause in the Pennsylvania Constitution originally applied only to multiple prosecutions in capital cases and not sentencing merger, the framers of the Pennsylvania constitution never intended to restrict the

legislature, via our double jeopardy clause, from defining merger of sentence issues."). Accordingly, this challenge fails.

**Conclusion**

To summarize, we determine that the evidence was sufficient to establish Appellant's identity as the perpetrator. However, we ascertain that the evidence was insufficient to sustain Appellant's four convictions for criminal mischief under Section 3304(a)(2) because damaging a car as a result of a collision does not constitute 'tampering' under that provision. Further, we reject Appellant's assertion that his convictions for aggravated assault under Section 2702(a)(1) and REAP should have merged, and deny his argument that Section 9756 is unconstitutional based on Pennsylvania's double jeopardy and separation of powers protections.

In light of our disposition, specifically, by reversing four of Appellant's convictions, we have upset the trial court's overall sentencing scheme. Therefore, we vacate the judgment of sentence and remand for resentencing. ***See, e.g.***, ***Commonwealth v. McCoy***, 199 A.3d 411, 420 (Pa. Super. 2018).

Convictions for criminal mischief under 18 Pa.C.S. § 3304(a)(2) reversed. All other convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/12/20