J-S44019-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GREGORIO ROBLES | : | |
| | : | |
| Appellant | : | No. 650 MDA 2022 |

Appeal from the Judgment of Sentence Entered December 20, 2021
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004346-2020

BEFORE: PANELLA, P.J., McLAUGHLIN, J., and PELLEGRINI, J.*

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: APRIL 4, 2023**

Gregorio Robles appeals from the judgment of sentence entered following his jury convictions for recklessly endangering another person ("REAP"), simple assault, and disorderly conduct.[1] Robles argues the convictions were against the weight of the evidence and that his conviction for simple assault should have merged for sentencing purposes with his REAP conviction. We affirm.

The trial court recounted the evidence as follows.

[Robles] and the victim, Guillermo Murillo ("Murillo"), were neighbors who both lived in the same townhouse complex. On June 11, 2020, [Robles] and Murillo were hanging out around [Robles'] girlfriend's car to smoke weed while parked in front of their townhouses. Specifically, [Robles] was seated "in the driver's

---

* Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 2705, 2701(a)(1), and 5503(a)(1).

seat with the door open" with music playing and Murillo was standing in front of him.

A verbal altercation quickly turned physical. Murillo stated the argument was initially over music, but also involved a disagreement about Murillo's girlfriend. On cross examination, Murillo then said the argument was over a jail saying where [Robles] replied, "[Y]o homie, don't talk to me like that." [Robles] testified Murillo didn't want him to say anything to his girlfriend about Murillo "taking mushrooms." Sergeant Jack Asper ("Asper") testified that [Robles] stated the argument was because [Robles] told Murillo he was going to tell his girlfriend that Murillo was smoking weed and cheating on her.

Murillo said the attack was "out of the blue." Murillo blocked the first hit with his shoulder. Murillo then saw a box cutter in [Robles'] hand which caused him to run. [Robles] testified that Murillo grabbed the box cutter that was on the car door. [Robles] says Murillo cut [his] finger with the box cutter and then swiped at him. Asper testified that [Robles] said Murillo originally had the box cutter and came at [Robles] first, but then [Robles] was able to get the box cutter away from him. [Murillo testified that w]hile [he] was trying to escape, [Robles] slashed Murillo three times with the box cutter. Murillo tripped over his sandals, but neighbors were able to step in and briefly break the two apart. [Robles] testified that he kicked Murillo, which made Murillo fall and drop the box cutter, which is where [Robles] claims Murillo's injuries came from.

After neighbors separated the two, [Robles] continued to chase Murillo. Murillo testified that [Robles] stated "I'm going to kill you" while standing in front of Murillo's door. [Robles] testified that Murillo was threatening to kill him, so [Robles] did not want to let Murillo get inside his townhouse to get a gun. At some point, Murillo was able to get to into his townhouse when [Robles] went back to his car. [Robles] stated he went directly to the police precinct when we got in his car and left the townhouse parking lot. Murillo saw [Robles] driving away so he emptied the magazine of his gun as a "distress call." Murillo claimed he did not point the gun at [Robles].

Initially, Murillo refused medical attention because he wanted to give his statement to police first. While Murillo was giving police a statement at the scene, [Robles] was waiting at the police station.

Murillo was later treated at the hospital. Pictures of Murillo's wounds were provided as exhibits and shown to the jury.

Trial Court Opinion, 6/21/22, 2-4 (citations to trial transcript omitted).

The jury convicted Robles on all counts. For the REAP conviction, the trial court sentenced him to two years of restrictive probation, with the first six months on house arrest. For simple assault and disorderly conduct, the court entered sentences of one year of probation to be served concurrently with the REAP sentence. Robles filed a post-sentence motion raising a weight claim. The court denied the motion, and Robles appealed.

Robles raises the following issues:

I.  Whether the trial court abused its discretion in denying Robles' post-sentence motion challenging his convictions for recklessly endangering another person, simple assault, and disorderly conduct where the greater weight of the evidence established he acted in self-defense?

II. Whether Robles' convictions for recklessly endangering another person and simple assault should have merged for sentencing purposes?

Robles' Br. at 5 (suggested answers omitted).

## I.      Weight of the Evidence

Robles challenges the trial court's rejection of his weight claim. He argues that he was acting from fear that Murillo would retrieve his gun from his house and shoot him, and that this fear was valid and corroborated by the undisputed testimony "that Murillo discharged his firearm as soon as he retrieved it from his house, despite the fact that Murillo saw Robles fleeing the scene." Robles' Br. at 20. He further argues that he did not violate his duty to retreat by continuing the fight once he had control of the boxcutter, as Murillo

was threatening to kill him and moving towards his home — a mere 40 feet away — where his firearm was located. *Id.* at 22-23. Robles claims he did retreat and flee in his car once he realized he could not stop Murillo from reaching his house. *Id.* at 23.

He argues that Murillo's explanation of how the attack began was not credible, as he did not explain what the "jail saying" was, or why Robles would have taken offense to it, or why Robles would have reacted violently to a conversation about Murillo's girlfriend. *Id.* at 20. Robles claims his version of events – that Murillo grew angry when Robles threatened to tell his girlfriend that he took mushrooms – was "far more coherent." *Id.* at 21. Robles argues the version Sergeant Asper testified Robles told him — that Robles had threatened to tell Murillo's girlfriend that he was smoking marijuana and cheating on her — is also more believable than Murillo's version of the events. *Id.* at 22. He further argues that the fact he went immediately to the police station should weigh in his favor as evidence that he lacked consciousness of guilt. *Id.* at 23-24.

We review a challenge to the weight of evidence for an abuse of discretion. *Commonwealth v. Fallon*, 275 A.3d 1099, 1107 (Pa.Super. 2022). Because the task of assigning weight to the evidence belongs to the fact finder, which may believe all, some, or none of the evidence, "[a] trial court may sustain a weight challenge only if the verdict is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Clemens*, 242 A.3d 659, 667 (Pa.Super. 2020) (internal quotation marks and citation

omitted). That high standard is met "[w]hen the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench[.]" ***Commonwealth v. Davidson***, 860 A.2d 575, 581 (Pa.Super. 2004) (internal quotation marks and citation omitted).

Self-defense is a complete defense to each of the crimes for which Robles was convicted. ***See*** 18 Pa.C.S.A. §§ 502, 505.[2] A person may use force against another if he "believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force[.]" 18 Pa.C.S.A. § 505(a). However, a person may not use deadly force to protect himself against deadly force he provoked in the same encounter, or if he knows he can retreat with complete safety. ***Id.*** at § 505(b)(2).[3] Once there is some evidence of record, from whatever source, to support a claim of self-defense, the Commonwealth bears the burden of disproving the defense beyond a reasonable doubt. ***Commonwealth v. Smith***, 97 A.3d 782, 787

---

[2] To prove REAP, the Commonwealth must establish Robles "recklessly engage[d] in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. To prove simple assault, the Commonwealth must show Robles "attempt[ed] to cause or intentionally, knowingly, or recklessly cause[d] bodily injury to another[.]" 18 Pa.C.S.A. § 2701(a)(1). To prove disorderly conduct, the Commonwealth must demonstrate Robles, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . engage[d] in fighting or threatening, or in violent or tumultuous behavior." 18 Pa.C.S.A. § 5503(a)(1).

[3] If the defendant uses only non-deadly force, there is no duty to retreat, but the defendant may only use enough force to repel the attack. ***Commonwealth v. Pollino***, 467 A.2d 1298, 1300 (Pa. 1983).

(Pa.Super. 2014). It may do so by establishing either: "1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety." ***Id.*** (citation omitted).

In rejecting the weight claim, the court stated it found Murillo's version of events more credible than Robles'. ***See*** Trial Ct. Op. at 13. It believed Murillo's testimony that Robles had begun the physical confrontation, and that Robles had slashed him with the box cutter three times as he was trying to escape. ***Id.*** at 12. The court also pointed out that "[b]ox cutters can be deadly weapons because they are very sharp and can easily cause major bleeding," Murillo required treatment at a hospital, and one of Murillo's injuries was a puncture wound near his lung. ***Id.*** The court also noted that even if Murillo had initially had the box cutter, Robles could have retreated to his home or car once he had control of the box cutter, rather than continue to chase Murillo. ***Id.*** at 10.

This issue is meritless. The jury was free to believe that Robles had provoked the attack with deadly force, had continued to use such force unnecessarily, or had violated a duty to retreat; any of these would disprove his self-defense claim, despite Murillo's proceeding to retrieve and discharge his firearm. ***Smith***, 97 A.3d at 787. On this record, we find no abuse of discretion in the trial court's denial of the weight claim.

## II.    Merger

Robles argues that his conviction for simple assault should have merged with his conviction for REAP for purposes of sentencing. **See** Robles' Br. at 27. He asserts the convictions arose from a single act — attacking Murillo with a box cutter — and that the elements of simple assault are included in the elements of REAP. **Id.** at 28 (citing 42 Pa.C.S.A. § 9765). He argues **Commonwealth v. Calhoun**, 52 A.3d 281 (Pa.Super. 2012), which held the two offenses do not merge, was decided incorrectly, because it disregarded that the definition of "bodily injury" includes serious bodily injury. **See** Robles' Reply Br. at 2-4. He therefore asserts simple assault, which requires the infliction of bodily injury or its attempt, includes the attempt to inflict serious bodily injuries. He posits his use of the box cutter both comprised an attempt to cause serious bodily injury (even though it caused non-serious bodily injury) (simple assault) and recklessly created the danger of serious bodily injury (REAP), and that these elements are equivalent. **See id.** at 4-5.

Pursuant to Section 9765 of the Judicial Code, crimes may only merge for sentencing purposes if they "arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense." 42 Pa.C.S.A. § 9756. Whether convictions qualify for merger under Section 9765 is a question going to the legality of the sentence.

*Calhoun*, 52 A.3d at 284.[4] Thus, "our standard of review is *de novo* and the scope of our review is plenary." *Id.* (citation omitted).

Simple assault, as charged, occurs when a person "attempts to cause or intentionally, knowingly, or recklessly causes bodily injury to another[.]" 18 Pa.C.S.A. § 2701(a)(1).[5] A person is guilty of REAP when he "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705.[6] The Commonwealth alleged Robles committed both crimes by "slicing [Murillo] with a box cutter." Information, 10/26/20, at 1.[7]

In *Calhoun*, a panel of this court considered whether simple assault merged with REAP, to resolve "demonstrably inconsistent" precedent. 52 A.3d at 285. We observed that the simple assault and REAP charges in that case arose from a single criminal act — a car accident — because the accident "simultaneously caused bodily injury, which indisputably occurred, and placed the victim in danger of death or serious bodily injury, which fortunately did

---

[4] This issue is not subject to waiver. *Commonwealth v. Green*, 149 A.3d 43, 52 (Pa.Super. 2016).

[5] "Bodily injury" is defined as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301.

[6] "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

[7] The Commonwealth charged simple assault as a third-degree misdemeanor and REAP as a second-degree misdemeanor.

not occur." *Id.* at 286. However, we found that the offenses were not subject to merger, because the element of "placing another individual in danger of death or serious bodily injury," was included in REAP but not simple assault. *Id.* We noted the difference between simple assault, which requires bodily injury or the attempt to cause it, and aggravated assault,[8] which requires seriously bodily injury or the attempt to cause it. *Id.* We stated,

> Plainly, an offender could place a victim in danger of serious bodily injury or death without causing, or attempting to cause, "non-serious" bodily injury. Conversely, causing "non-serious" bodily injury (or the attempt) is neither the same as, nor a necessary step in the course of, creating the danger of serious bodily injury or death. Both crimes require at least one element not included in the other.

*Id.* at 286-87.[9]

We find *Calhoun* binding. Furthermore, "if the crimes themselves can result in committing one without committing the other, the elements in general are different, and the legislature has said merger cannot apply." *Commonwealth v. Green*, 149 A.3d 43, 53 (Pa.Super. 2016) (quoting *Commonwealth v. Coppedge*, 984 A.2d 562, 564 (Pa.Super. 2009)).[10] The

---

[8] *See* 18 Pa.C.S.A. § 2702(a)(1).

[9] We further observed that, "[t]he plain language of the statutes establishes that the mischiefs to be remedied are readily distinguishable and independent of each other." *Calhoun*, 52 A.3d at 287.

[10] *See also Coppedge*, 984 A.2d at 563-64 (discussing that when Section 9765 took effect in 2003 it rendered previous common-law merger test obsolete).

convictions do not merge, and the court did not err in imposing a sentence for each.[11]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/4/2023

---

[11] **See also Commonwealth v. Cianci**, 130 A.3d 780, 783 (Pa.Super. 2015) (holding REAP does not merge with aggravated assault); **accord Commonwealth v. Edwards**, 229 A.3d 298, 315 (Pa.Super. 2020), aff'd, 256 A.3d 1130 (Pa. 2021) ("As **Cianci** holds, because there are ways an individual could commit aggravated assault under Section 2702(a)(1) without committing REAP and vice versa, the elements of the two offenses are different and do not merge. That Appellant committed aggravated assault causing serious bodily injury while also committing REAP is inapposite to the merger analysis").