J-S05004-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL A. METZ | : | |
| | : | |
| Appellant | : | No. 960 MDA 2021 |

Appeal from the Judgment of Sentence Entered March 17, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0000490-2020

BEFORE: PANELLA, P.J., STABILE, J., and DUBOW, J.

MEMORANDUM BY PANELLA, P.J.: **FILED APRIL 20, 2022**

Michael A. Metz appeals from the judgment of sentence imposed following his convictions of three counts of criminal trespass, two counts of theft by unlawful taking, and one count each of burglary and receiving stolen property. *See* 18 Pa.C.S.A. §§ 3503(a)(1)(ii), (b)(1)(i), (iii); 3921(a); 3502(a)(1)(ii); 3925(a). Metz argues that the evidence was insufficient to support his convictions, the verdicts were against the weight of the evidence, and the trial court abused its discretion in imposing his sentence. We affirm.

In October 2019, Metz moved into a bedroom in the basement of the home of his daughter and her husband, April Metz ("April") and Gregory Manzolillo. The day after Metz moved into the home, April and Manzolillo installed padlocks on the doors of their bedroom and another bedroom on the

second floor, and informed Metz that he was not allowed in those bedrooms. However, Metz had access to the rest of the home.

On February 1, 2020, at approximately 6:00 p.m., April dropped Metz off at Wal-Mart on her way to her bartending job. When she left the home, all the doors were locked, including the doors of the two second-floor bedrooms. Manzolillo was not at home, as he worked overnight hours at his job.

When she returned home at approximately 2:30 a.m., April went to her second-floor bedroom and noticed that the padlock on the door had been broken. April then entered the room and observed that the lock to the safe in the closet had been pried open. April noticed that several items were taken from the safe, including an envelope containing her tuition money — approximately $4,000 in hundreds and twenties, a car title, Manzolillo's passport and W-2 forms, and several paycheck stubs. Further, a Remington 870 pump-action shotgun was missing from the closet. Notably, none of the other doors or windows in the home appeared to be damaged, and nothing else of value was missing.

April immediately confronted Metz about the missing items and threatened to call the police. After Metz denied knowledge of the burglary, April called the police. In the interim, April reviewed indoor motion-activated surveillance footage, and saw Metz going upstairs toward the bedroom and come back down the stairs with a clothing donation box, which included a tall slender object resembling the barrel of a shotgun.

Upon arriving at the scene, the police discovered the shotgun behind the headboard of Metz's bed. As a result, the police arrested Metz and subsequently found that he possessed $3,104 in his glasses case. Notably, the denominations of the money included 29 hundred dollar bills and 8 twenty dollar bills. After the police had left their home, April and Manzolillo found their missing documents in the dresser next to Metz's bed. The couple also found the empty envelope that had contained April's tuition money and the face plate of the safe in a trash can in the basement. April informed the police about these discoveries.

The case proceeded to a jury trial, at which evidence of the foregoing as well as the surveillance footage was presented. The jury ultimately found Metz guilty of two counts of theft by unlawful taking and one count each of burglary, criminal trespass, and receiving stolen property. Separately, the trial court found Metz guilty of two counts of criminal trespass. Thereafter, on March 17, 2021, the trial court sentenced Metz to an aggregate sentence of 3 to 10 years' imprisonment.[1] Metz filed a post-sentence motion, asserting, *inter*

_____

[1] Specifically, the trial court imposed a prison sentence of 1½ to 5 years for the burglary conviction, and a consecutive prison sentence of 1½ to 5 years for a theft by unlawful taking conviction. For guideline calculations, Metz had a prior record score of 4. The burglary conviction had an offense gravity score of 7, which resulted in a standard range of 18 to 24 months in prison. The theft by unlawful taking conviction had an offense gravity score of 8, which resulted in a standard minimum range of 21-27 months in prison. The other counts merged for the purposes of sentencing.

*alia*, that the verdicts were against the weight of the evidence and the sentence was excessive. The trial court denied the motion, and this timely appeal followed.[2]

On appeal, Metz raises the following questions for our review:

1. Whether there was legally insufficient evidence to support [Metz's] convictions where the Commonwealth failed to exclude beyond a reasonable doubt the possibility that someone other than [Metz] was the one who broke into the complainants' bedroom and safe, as the evidence on record was consistent with this inference of an alternative perpetrator?

2. Whether the verdicts went against the weight of the evidence where, *inter alia*, [Metz] innocently remained in the house after the alleged burglary; he knew about the security camera in the living-room; the shaft seen to be sticking out of the box could not be certainly identified as a gun; and the cash that was found on him was in a different amount from the cash he was alleged to have stolen, though the difference was never found in the house?

3. Whether the Court abused its discretion in sentencing [Metz] to 3-10 years in prison without due regard to the mitigating circumstances of his case, the lack of malice, the minimal impact on the alleged victims, and without explaining how such a sentence was necessary to protect the public or to rehabilitate [Metz]?

Brief for Appellant at 9-10.[3]

_____

[2] Metz initially filed a *pro se* notice of appeal on March 18, 2021, despite being represented by counsel. However, this Court dismissed this appeal as prematurely filed. **See Commonwealth v. Metz**, 354 MDA 2021 (Pa. Super. filed May 5, 2021) (*per curiam*).

[3] We note that despite being represented by counsel on appeal, Metz, *pro se*, filed a separate letter to this Court raising various claims of his trial counsel's

*(Footnote Continued Next Page)*

In his first claim, Metz contends that the evidence was insufficient to support his convictions. *See id.* at 25. In support of this claim, Metz does not cite or argue any specific element of any of the crimes for which he was convicted; instead, he asserts that the evidence did not sufficiently establish him as the perpetrator. *See id.* at 25-33; *see also id.* at 27-28 (arguing that his convictions were based upon the allegation that he broke into the locked bedroom, and, therefore, if the evidence was insufficient to establish that he entered the bedroom, the evidence would be insufficient to support any of the convictions). Specifically, Metz asserts that the circumstantial evidence supporting the inference that he was the perpetrator who entered the bedroom was also consistent with the opposing inference that someone else had committed the burglary. *See id.* at 25, 28, 33. Metz highlights that although cash was found on him, neither his fingerprints nor his DNA were found on the allegedly stolen gun, the broken locks or the safe; he observed the front door was open when he got home from Walmart; and the police could not establish when the burglary occurred. *See id.* at 31-32.

Our standard of review for sufficiency claims is as follows:

---

ineffectiveness. It is well settled that Metz is not entitled to hybrid representation. *See Commonwealth v. Jette*, 23 A.3d 1032, 1036 (Pa. 2011). In any event, we note that Metz's ineffectiveness claims are premature, and he is free to raise these claims in a timely filed Post Conviction Relief Act petition. *See Commonwealth v. Holmes*, 79 A.3d 562, 576 (Pa. 2013) (reaffirming general rule that ineffective assistance of counsel claims are deferred to PCRA review, and such claims should not be reviewed upon direct appeal absent special circumstances).

The standard we apply ... is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Edwards*, 229 A.3d 298, 305-06 (Pa. Super. 2020) (citation omitted).

The evidence presented at trial established that Metz moved in with April and Manzolillo and had a bedroom in their basement. *See* N.T., 3/8/21, at 92-93. April and Manzolillo installed padlocks on the doors of the second-floor bedrooms, and informed Metz that he was not allowed in the bedrooms. *See id.* at 94-95, 119; *see also* N.T., 3/9/21, at 146-47. However, according to April, Metz had a key to the basement door and had access to the rest of the home. *See* N.T., 3/8/21, at 93, 117-118.

On February 1, 2020, at approximately 6:00 p.m., April took Metz to Wal-Mart on her way to work. *See id.* at 96-97. April indicated that all the doors, including the bedroom doors, were locked when she left. *See id.* at 97.

When she returned later that night, she noticed that the padlock on her bedroom door had been broken. *See id.* at 97-98. April noticed that the safe in the closet had been pried open and various items were missing, including an envelope containing about $4000, a car title, Manzolillo's passport and W-2 forms, and pay stubs. *See id.* at 98-100, 107, 120-21; *see also* N.T., 3/9/21, at 167, 189. Further, a shotgun was missing from the closet. *See* N.T., 3/9/21, at 148-149.

April called the police and subsequently reviewed the indoor motion-activated surveillance footage and saw Metz moving a clothing donation box through the living room with a cylindrical object that appeared to be a shotgun. *See* N.T., 3/8/21, at 103-07, 124; *see also* N.T., 3/9/21, at 157-58 (wherein the jury was shown the video). No other motion was detected on the surveillance system on the night in question. *See* N.T., 3/8/21, at 113-114.

The police responded to the scene and ultimately discovered the shotgun between the headboard of Metz's bed and the wall. *See* N.T., 3/9/21, at 200-01. The police arrested Metz and found that he possessed $3,104 in his glasses case in similar denominations to the missing money. *See id.* at 179-181. After the police left, April and Manzolillo found the missing documents in the dresser next to Metz's bed in the basement. *See* N.T., 3/8/21, at 107, 131-32; *see also* N.T, 3/9/21, at 154-55, 170. April and Manzolillo also discovered the envelope that had contained her money, and the face plate of the safe that had been pried off in the trash can in the

basement. **See** N.T., 3/8/21, at 108, 110, 130. Further, the couple indicated that none of the doors or windows appeared to be damaged, and nothing else of value was missing. **See id.** at 113, 134; **see also** N.T., 3/9/21, at 175.

For his part, Metz testified that upon returning from Wal-Mart, he noticed that the front door was open. **See** N.T., 3/9/21, at 260. Metz acknowledged that he was aware of the surveillance system in the home, and the box he was seen carrying in the video contained clothing to be donated and that the cylindrical object was a broken black broom handle. **See id.** at 260, 261-62. Metz denied breaking open the lock on the bedroom and taking the items from the closet and safe. **See id.** at 255-56. Metz indicated that he received the $3000 found in his glasses case from a female friend. **See id.** at 267. However, on cross-examination, Metz admitted that in his testimony at the preliminary hearing, he had stated that he earned some of the money from a job. **See id.** at 269-71.

When reviewing the credible evidence set forth by the Commonwealth, as well as the reasonable inferences drawn from that evidence in the light most favorable to it, there was sufficient evidence to establish that Metz was the perpetrator who committed the crimes. Indeed, April and Manzolillo padlocked their bedroom and admonished Metz that he was not allowed in the room. On the date of the burglary, Metz is the only person in the home captured on the surveillance camera, and all the items taken from the

padlocked bedroom were in Metz's bedroom, in a trash can in the basement, or in his possession.

The only evidence admitted at trial that another perpetrator committed the crimes was through Metz's own testimony, which the jury, as the finder of fact, found to be not credible. Therefore, the jury reasonably concluded that Metz entered a separately secured portion of the home without permission, pried open the safe, and took the gun, money, and documents. Accordingly, the evidence was sufficient to support the convictions. *See Commonwealth v. Thomas*, 561 A.2d 699, 705 (Pa. Super. 1989) (concluding that evidence that appellant entered victim's apartment without license to do so and items taken from apartment were found in appellant's possession established sufficient evidence to support burglary conviction); *see also Commonwealth v. Janda*, 14 A.3d 147, 164 (Pa. Super. 2011) (finding evidence sufficient to support receiving stolen property conviction where the stolen items from nine similar burglaries were found in appellant's possession).

Next, Metz contends that the verdicts were against the weight of the evidence. *See* Brief for Appellant at 34, 41. Metz argues that there was exculpatory evidence presented at trial, including that he remained in the house after the alleged burglary, he knew about the security camera in the home, the shaft seen to be sticking out of the box could not be identified as a gun; and the cash that was found on him was in a different amount from the

cash that was stolen. ***See id.*** at 34, 35-38, 40; ***see also id.*** at 39 (claiming that the video was of such "dodgy" quality to be of probative weight). Metz also asserts that it strains credulity that he would remain in the home after the committing the burglary, and that the evidence on record did not preclude an inference that it was an unknown intruder, or the complainants themselves who broke the locks to the bedroom. ***See id.*** at 36, 40.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.

***Commonwealth v. Sexton***, 222 A.3d 405, 414 (Pa. Super. 2019) (citation and emphasis omitted).

Here, the trial court acted within its discretion in denying Metz's weight of the evidence claim. As noted above, the credible evidence established that Metz broke into April's and Manzolillo's bedroom and stole a gun, money, and other items, which were subsequently found in Metz's possession or in his bedroom. The jury, as the trier of fact, was well within its authority to believe the Commonwealth's evidence, and not believe Metz's testimony. ***See Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (noting that appellate courts are precluded from reweighing the evidence and substituting our judgment for that of the fact-finder). In this regard, the jury observed the video and was free to interpret whether the box carried by Metz

contained the shotgun. Moreover, the fact that Metz remained in the home with the stolen items does not render the verdicts so contrary to the evidence as to shock one's sense of justice, especially where, as here, the credible evidence established the elements of the crimes. Accordingly, the trial court did not abuse its discretion in denying Metz's weight challenge. **See Commonwealth v. Chamberlain**, 30 A.3d 381, 396 (Pa. 2011) ("A motion alleging the verdict was against the weight of the evidence should not be granted where it merely identifies contradictory evidence presented by the Commonwealth and the defendant").

In his final claim, Metz challenges the discretionary aspects of his sentence. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." **Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010). Prior to reaching the merits of a discretionary sentencing issue, this Court conducts

> a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Moury**, 992 A.2d at 170 (citation and brackets omitted).

Here, Metz filed a timely notice of appeal and raised his sentencing claim in a timely post-sentence motion. Metz also included a separate Rule 2119(f)

Statement in his brief; accordingly, we will review his Rule 2119(f) statement to determine whether he has raised a substantial question.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." **Commonwealth v. Edwards**, 71 A.3d 323, 330 (Pa. Super. 2013) (citation omitted). "A substantial question [exists] only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Id.** (citation omitted).

In his Rule 2119(f) statement, Metz argues that the trial court improperly failed to consider the standards for sentencing set forth by 42 Pa.C.S.A. § 9721(b), including his rehabilitative needs and the nature and circumstances of the offenses. **See** Brief for Appellant at 22. This claim raises a substantial question. **See Commonwealth v. Coulverson**, 34 A.3d 135, 143 (Pa. Super. 2011) (recognizing that a claim that impugns the trial court's failure to offer specific reasons for the sentence, which "comport with the considerations required in section 9721(b)[,]" raises a substantial question).

Our standard of review of a challenge to the discretionary aspects of a sentence is well settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its

- 12 -

judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Robinson***, 931 A.2d 15, 26 (Pa. Super. 2007) (citation omitted).

Metz contends that the trial court abused its discretion in imposing the sentence because the trial court did not meaningfully consider the protection of the public, the gravity of the offense in relation to the impact on the victim and the community, or Metz's rehabilitative needs. ***See*** Brief for Appellant at 41, 43. Metz highlights that he never left the house after the burglary and the crimes do not impact the public. ***See id.*** at 43-44.

Here, the record reflects that the trial court had the benefit of a presentence investigation report ("PSI") prior to imposing its sentence. ***See*** N.T., 3/17/21, at 8, 10, 14, 19; ***see also*** Trial Court Opinion, 9/27/21, at 15. Moreover, the trial court reviewed Metz's employment and family background, his medical and mental health issues, his drug counseling and psychiatric inpatient treatment, the fact he was homeless, and his prior criminal history. ***See*** N.T., 3/17/21, at 7-8, 9-11. The trial court also heard a statement from April, who explained that the crimes had led her to seek counseling for anxiety, depression, and PTSD. ***See id.*** at 3-5. Finally, Metz spoke on his own behalf, proclaiming his innocence and complaining of poor prison conditions and his stolen property in April's home. ***See id.*** at 14-19. Thereafter, the trial court reviewed the evidence of the case and imposed the sentence, highlighting that

sentence for the theft conviction was in the mitigated range. ***See id.*** at 20-23.

Upon review, the trial court did consider Metz's rehabilitative needs, the protection of the public, and the gravity of the offense. Based upon these considerations, we discern no abuse of the trial court's discretion in imposing Metz's sentence. ***See Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009) (stating that "where the trial court is informed by a [PSI], it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed").

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/20/2022